No. 86-404

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

ROZEL CORPORATION, a Montana
corporation,

        Petitioner and Appellant,

    -vs-

DEPARTMENT OF PUBLIC SERVICE REGULATION,
PUBLIC SERVICE COMMISSION, an agency of
the State of Montana, and THREE RIVERS
DISPOSAL, a Montana partnership,

        Respondents and Respondents.

_____

APPEAL FROM:  District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin,
              The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Bryan, Atkins, Anacker; John P. Atkins argued, Bozeman,
        Montana

    For Respondents:

        Robin McHugh argued for Public Service Commission,
        Helena, Montana
        Joseph W. Sabol argued for Three Rivers, Bozeman,
        Montana

_____

Submitted:  January 16, 1987

Decided:  March 31, 1987

Filed: MAR 31 1987

_____
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Rozel Corporation appeals a May 6, 1986, order of the Eighteenth Judicial District Court, Gallatin County, which upheld a final order of the Public Service Commission (PSC). The PSC final order denied Rozel's application to begin a garbage service in the Bozeman area. We affirm the District Court.

Rozel presents two issues for our review:

1. Did the District Court err in holding that the PSC's regulation of entry into the garbage-hauling business, without regulation of rates, did not violate the "Unfair Trade Practices" statutes, Title 30, Chap. 14, Parts 1 and 2, MCA?

2. As applied to the denial of Rozel's application, does § 30-14-105(1), MCA, which exempts the PSC from the purview of the Unfair Trade Practices and Consumer Protection Act, violate Article XIII, Section 1(2), of the Montana Constitution?

In August 1984, appellant Rozel applied to the PSC for a Class D Certificate of Public Convenience and Necessity, so that he could begin a garbage-hauling service in Gallatin County and Big Sky, Montana. Respondent Three Rivers Disposal is currently the only private garbage service in the area. Three Rivers filed a protest to Rozel's application. The PSC held a public hearing on the matter on November 15 and 16, 1984.

On March 11, 1985, the PSC issued a 23-page final order denying Rozel's application. The order cited the satisfactory service of Three Rivers, the lack of demand for Rozel's additional service, and the potential adverse effect of Rozel's service upon Three Rivers' service. The heart of the

PSC's reasoning is contained in Findings 52 and 53, where it states a preference for service stability over competition:

52. Some witnesses did contend that competition in the area would tend to decrease garbage rates. This may very well be true in the short run. However, history indicates that in the past it also led to severe financial difficulties for the companies involved and resulted in the ultimate failure of each of those companies. Customers in the area have benefited from periods of competition and relatively low rates; perhaps even below cost at times. However, they have also been subjected to a very unstable and unhealthy industry.

53. Given that there does not appear to be any unmet demand and that service appears to be adequate and prices reasonable, it seems that what the area really needs at this time is a period of stability. This is not to say that the public should be prepared to tolerate unmet demand or inadequate service or unreasonable rates should they occur in the future. The existing carrier remains on notice that the Commission retains the power to reexamine the situation and grant a new authority should the circumstances merit it. [Emphasis added.]

The PSC did not consider the fitness and ability of Rozel to meet any perceived additional need. Based upon the "public convenience and necessity" and the "impact to existing transportation services," the PSC concluded that Gallatin County and Big Sky did not require another garbage carrier.

On April 26, 1985, pursuant to the Montana Administrative Procedure Act, Rozel petitioned the District Court for a review of the PSC order. The District Court heard the case on April 21, 1986. On May 6, 1986, the District Court found

no violation of federal antitrust laws or the Montana Unfair Trade Practices and Consumer Protection Act. The District Court also found that the PSC order did not violate due process or equal protection, and that the decision of the PSC was not arbitrary or capricious. On July 15, 1986, the District Court denied Rozel's motion for reconsideration, because forty-five days had passed since the District Court had filed its order. Rozel appeals the District Court's May 6, 1986, order.

Issue 1:

Did the District Court err in holding that the PSC's regulation of entry into the garbage-hauling business, without regulation of rates, did not violate the "Unfair Trade Practices" statutes, Title 30, Chap. 14, Parts 1 and 2, MCA?

Our standard of review of PSC determinations is defined in § 2-4-704(2), MCA:

> The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (a) in violation of constitutional or statutory provisions;
>
> (b) in excess of the statutory authority of the agency;
>
> . . .
>
> (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

4

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

. . .

On this issue, Rozel's argument can be reduced to three sentences: The PSC _does_ _not_ have the authority to regulate rates of garbage-haulers. Therefore, the PSC _should_ _not_ have the authority to regulate entry into the garbage-hauling business. Conversely, if the PSC regulates _entry_, it should also regulate _rates_. Rozel blends the partial language of several statutes to reach this summary conclusion. Rozel argues that without rate regulation, the public is subject to monopolistic garbage-haulers. Rozel generally asserts that the PSC acted in excess of its statutory authority, in violation of § 30-14-101 et seq., and 30-14-201, et seq., MCA. However, Rozel fails to cite any specific instance of excess or statutory violation.

The PSC contends that the regulation of entry into the garbage-hauling business by the PSC does not violate the Consumer Protection Act, § 30-14-101 et seq., MCA, because the Act does not cover actions of the PSC. The PSC asserts that § 30-14-105(1), MCA, specifically exempts the PSC from the scope of the Consumer Protection Act, by stating: "Exemptions. Nothing in this part shall apply to: actions or transactions permitted under laws administered by the Montana public service commission acting under statutory authority of this part or the United States."

The PSC argues that the word "part" in § 30-14-105(1) actually means "state" in order to avoid an absurd result; for if § 30-14-105(1) is read literally, then the actions of the PSC are _exempt_ from the Consumer Protection Act _only_ when those actions are taken _pursuant_ to the authority of the

5

Consumer Protection Act. However, the Act grants no such authority to the PSC. Therefore, the plain meaning of § 30-14-105(1) is that the actions and transactions of the PSC, acting under its statutory authority of Title 69, "Public Utilities and Carriers," are exempt from the Consumer Protection Act. This interpretation accords with the federal model act from which the Consumer Protection Act was drafted, where the word "state" is used in place of "part."

Respondent Three Rivers contends that the new enactment of § 69-12-323(2)(b), MCA, "Decision on application," containing the phrase "may include a consideration of competition," provides the PSC with the necessary tool to handle potentially harmful monopoly situations. The language is permissive, but not mandatory, thereby indicating that competition may be beneficial in some cases, but not all cases. The legislature chose to partially regulate the garbage industry in Montana. It has thereby certified a policy of limited entry into the garbage transportation business and recognized that open competition, under some circumstances, may be harmful to the existing carrier and the consuming public. Three Rivers adds that § 30-14-201 et seq., "Unfair Trade Practices Generally", deals with and is applicable to any person, partnership, firm, corporation, joint stock company or other association engaged in business within this state, but it is not applicable to the State of Montana itself or any agency of state government.

In analyzing this issue, we note that § 69-12-301(5), MCA, would classify Rozel as a Class D motor carrier: "Class D motor carriers embraces all motor carriers operating motor vehicles transporting (including pickup and disposal) ashes, trash, waste, refuse, rubbish, garbage, and organic and inorganic matter." Through the authority bestowed upon it in Title 69, the PSC controls entry into the garbage-hauling

6

business. However, the PSC does not regulate the <u>rates</u> charged by Class D carriers and does not regulate the quality of the service provided. We find that the express authority to regulate entry is not concomitant with the implied requirements to regulate rates. The only function that the PSC is authorized to perform is the granting or denial of the Class D certificate to do business.

Section 69-12-323(2), MCA, outlines the factors the PSC must use when considering an application for a Class D certificate:

> (a) In determining whether a certificate should be issued, the commission shall give reasonable consideration to the <u>transportation service being furnished</u> . . . and shall give due consideration to the likelihood of the proposed service being permanent and continuous throughout 12 months of the year . . .
> (b) For purposes of Class D certificates, <u>a determination of public convenience and necessity may include a consideration of competition</u>. [Emphasis added.]

The PSC interpreted § 69-12-323(2)(a) as requiring it to address three factors when considering Rozel's garbage-hauling application. These three factors were: 1) public convenience and necessity, 2) applicant fitness, and 3) existing competition.

The PSC observed that garbage-hauling competition would be against the public interest, in its final order finding no. 49:

> . . . In each instance [competition] required that a consolidation occur in order to continue the provision of service; only to see a new competitor rise and the cycle repeat itself. . . The Commission is concerned that <u>a grant of this application would only cause</u>

7

> that *cycle* *to* *repeat* *itself* *once* *more*.
> [Emphasis added.]

The evidence offered to the PSC in this case established the devastating impact which past garbage company competitors brought upon each other, and consequently the consumer. The consumer reaped the initial benefits of the competition price war by an immediate reduction in garbage rates. However, the consumer ultimately paid for this fleeting benefit with an unstable garbage carrier attempting to provide services to the community without proper maintenance and inventory. The PSC properly concluded that renewing this situation by granting Rozel's application was not in the public interest.

Although the action of the PSC can be deemed anti-competitive in nature, its authority to take such action was conferred upon it by the legislature in Title 69. The state has the power to engage in economic regulation, even if such regulation is adverse to competition. New Motor Vehicle Board of California v. Orrin W. Fox Co. (1978), 439 U.S. 96, 111, 99 S.Ct. 403, 412, 58 L.Ed.2d 361.

Our scope of judicial review is limited by § 2-4-704(2), MCA, to matters of law, not fact. This Court may not consider the weight of the evidence. We hold that the PSC acted within its discretionary and statutory authority. Because the PSC procedure was proper, we affirm the District Court.

## Issue 2

As applied to the denial of Rozel's application, does § 30-14-105(1), MCA, which exempts the PSC from the purview of the Unfair Trade Practices and Consumer Protection Act, violate Article XIII, Section 1(2) of the Montana Constitution, which states: "The legislature shall provide protection

8

and education for the people against unfair practices by either foreign or domestic corporations, individuals, or associations"?

This issue is not properly before this Court. This issue was first raised in Rozel's motion for reconsideration, which was denied because forty-five days had elapsed. As we have often held, a party may not change its theory on appeal from the theory advanced in the trial court. Chamberlain v. Evans (1979), 180 Mont. 511, 517, 591 P.2d 237, 240. In addition, we have repeatedly stated that: "This Court will not review a matter raised for the first time on appeal." Peter v. Newkirk (Mont. 1981), 633 P.2d 1210, 1212, 38 St.Rep. 1526, 1528.

We affirm the order of the District Court.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices