No. 99-253

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 228

PHILIP G. KISER,

Petitioner and Appellant,

v.

STATE OF MONTANA, DEPARTMENT OF REVENUE

and HASSBRA, INC., a Montana Corporation,

Respondents and Respondents.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

Honorable Thomas C. Honzel, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Gregory G. Smith, Smith Law Offices, Great Falls, Montana

For Respondents:

R. Bruce McGinnis, Department of Revenue, Helena, Montana

Karl P. Seel, Attorney at Law, Bozeman, Montana

_____

Submitted on Briefs: August 5, 1999

Decided: September 28, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

1. ¶This is an appeal from a decision of the First Judicial District Court, Lewis and Clark County, which affirmed the issuance of a retail beer/wine license to Hassbra, Inc., d/b/a Café Internationalé. We affirm.
2. ¶We restate the issues as follows:
3. ¶1. Did the District Court err in determining that the Department of Revenue's (DOR's) decision awarding the subject license to Café Internationalé was supported by substantial evidence, particularly in relation to liquor licensing requirements pertaining to public convenience and necessity?
4. ¶2. Is the location requirement of DOR's liquor licensing process unreasonable, discriminatory, and unconstitutional as applied by DOR?
5. ¶The District Court succinctly summarized the background facts:

Based on the 1994 census update, DOR determined that because of an increase in population in Bozeman, Montana, one additional retail beer/wine license could be issued in the Bozeman quota area. A number of applicants applied for the license, including Kiser and [Café Internationalé]. Although DOR initially returned Kiser's application because it failed to specify a proposed location, Kiser was allowed to participate in the proceedings and his application was considered by the hearing examiner. Following a public hearing, the hearing examiner found that public convenience and necessity would best be served by awarding the license to [Café Internationalé]. DOR adopted the hearing examiner's recommendation and issued the license to [Café Internationalé]. [Café Internationalé] has been operating under the license since January 5, 1998.

After reviewing the record, the District Court issued a memorandum and order stating that the detailed findings of fact made by DOR's hearing examiner were supported by substantial evidence and did not indicate a misapprehension of the effect of the evidence. The court ruled that DOR's decision to issue the beer/wine license to the established business at Café Internationalé instead of to Kiser's potential business venture was not clearly erroneous.

## Issue 1

1. ¶Did the District Court err in determining that DOR's decision awarding the subject

license to Café Internationalé was supported by substantial evidence, particularly in relation to liquor licensing requirements pertaining to public convenience and necessity?

2. ¶The standard of review of findings of fact to determine whether they are clearly erroneous was set forth in *Weitz v. Department of Natural Resources & Conservation* (1997), 284 Mont. 130, 133-34, 943 P.2d 990, 992:

(1) the record will be reviewed to see if the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, it will be determined whether the trial court misapprehended the effect of evidence; and (3) if substantial evidence exists and the effect of evidence has not been misapprehended, the Supreme Court may still decide that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the Court with the definite and firm conviction that a mistake has been committed.

We review conclusions of law to determine if the agency's interpretation of the law is correct. *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

1. ¶In this case, § 16-4-203, MCA (1995), controlled. That statute stated that a beer/ wine license may be approved "only if the department has determined, upon a hearing held pursuant to the Montana Administrative Procedure Act, that the issuance or transfer of the license is justified by public convenience and necessity." The statute did not provide a definition for the term "public convenience and necessity,"

2. ¶The main thrust of Kiser's argument on appeal is that the hearing examiner erred in finding that Café Internationalé is the applicant best able to satisfy public convenience and necessity. Kiser essentially argues that public convenience and necessity require that the new liquor license must be issued to the applicant best able to supply the most liquor to the most people for the most hours per day. He asserts that Café Internationalé is not that applicant, because Café Internationalé proposed to serve liquor only during the evening hours and only with restaurant dinners, and did not plan to advertise the availability of liquor on the outside of its building. Kiser contends that his proposed business could distribute more liquor to more people, which he paradoxically asserts is the goal of Montana's quota system limiting the number of liquor licenses available in any given area.

3. ¶Kiser unpersuasively points to various administrative regulations in support of his public convenience and necessity argument. None of the regulations are dispositive. This Court has recognized that rigid rules defining the term public convenience and necessity are not necessary, because public convenience and necessity involve a fact-intensive inquiry. *Ramage v. Department of Revenue* (1989), 236 Mont. 69, 73, 768 P.2d 864, 866. Several factors should be considered:

[P]ublic convenience and necessity are advanced where the issuance of the license will materially promote the public's ability to engage in the licensed activity. This determination involves an evaluation of a variety of criteria, including *inter alia* the business abilities and character of the applicant, the demand for services in the area to be served, the impact on existing purveyors,

and any adverse impact on the area to be served. No single factor is a necessary or sufficient indicator of public convenience and necessity . . . .

*Ramage*, 236 Mont. at 74, 768 P.2d at 867.

1. ¶The District Court noted that the hearing examiner made detailed findings of fact and thoroughly analyzed all of the applicants for the beer/wine license. The court correctly stated that it could not substitute its judgment as to the weight of the evidence on questions of fact. It noted the evidence of strong public support for Café Internationalé's application, "in spite of" the limitations on availability of service. In determining that Café Internationalé was most deserving of the available license, the hearing examiner noted that Café Internationalé's application was supported by more persons than any other applicant's. Petitions were submitted containing 721 signatures supporting the application of Café Internationalé and separate letters of support were received from nine families and fifty-five individuals. Further, the hearing examiner deemed it important that Café Internationalé had demonstrated itself to be a successful enterprise, even without a liquor license. Kiser's proposed establishment, in contrast, was untested as a business.

2. ¶Kiser specifically challenges the hearing examiner's finding that the lack of a beer/wine license has "hampered [Café Internationalé's] catering efforts." Kiser argues that this is irrelevant; the question is whether the public's need for catering of alcohol is currently being met from the viewpoint of the public, not from the viewpoint of Café Internationalé.

This finding, however, is supported by substantial evidence and, when viewed in the context of all of the findings of fact, is not otherwise clearly erroneous.

1. ¶Kiser asserts that other findings should have been made but were not. He asserts that the hearing examiner should have found that Café Internationalé's application for the beer/wine license did not best serve public convenience and necessity because Café Internationalé is located on the same street as several churches and in a building which was also temporarily housing an alternative high school. The hearing examiner discussed these matters in his written decision, determining that Café Internationalé's location did not bar its application.

2. ¶Kiser's assertions concerning findings which should have been made but were not must be reviewed under the second and third prongs of our standard of review of findings of fact: whether the trial court misapprehended the effect of the evidence or a review of the record leaves the Court with the definite and firm conviction that a mistake has been committed. The Court has reviewed the extensive findings. The hearing examiner did not misapprehend the effect of the evidence, nor are we left with a definite and firm conviction that a mistake has been committed.

3. ¶Kiser also points out that Café Internationalé was the only applicant to have protest letters filed against it. The hearing examiner discussed those two letters in his written decision, pointing out that the letter writers did not follow up by appearing personally at the hearing to oppose Café Internationalé's application, and determining that the letters were not fatal to Café Internationalé's application.

4. ¶We hold that the District Court did not err in determining that DOR's decision awarding the subject license to Café Internationalé was supported by substantial evidence and was not otherwise clearly erroneous.

## Issue 2

1. ¶Is the location requirement of DOR's liquor licensing process unreasonable, discriminatory, and unconstitutional as applied by DOR?

2. ¶An application for a liquor license must specify a location in order to be considered. Section 16-4-402, MCA. Despite Kiser's failure to specify a location for his proposed establishment in his application, he was permitted to participate in the licensing process and his application was considered on its merits. The hearing examiner's findings specifically discussed the lack of a proposed location as to Kiser's application.

16. The Liquor Division, Montana Department of Revenue, acted correctly in returning the application and supporting documents of Philip G. Kiser, d/b/a River City, due to the fact that no location for the premises proposed for licensing had been identified.

17. The location of a premises proposed for licensing must be identified at the outset of the application process. Section 16-4-207, MCA, addressing publication of notices of applications, includes the specific necessity of showing a location in its notice format. The agency must also know the location of a premises under § 16-4-405, MCA, in order to determine if the premises is off regular police beats, if it is in a zoned area where the sale of alcohol is prohibited, if the welfare of persons residing in the vicinity will be adversely or seriously affected, or if there is a public convenience and necessity justification for a license at that location.

Kiser asserts that the distinction made by DOR between enforcement of the location requirement (which must be satisfied at the beginning of the application process) and enforcement of the requirement that the applicant be a United States citizen (which must be satisfied before the license is issued) is clearly erroneous.

1. ¶The question of the applicant's citizenship in a beer/wine license application is answered "yes" or "no" and does not require a comparative analysis by the hearing examiner. As to this requirement, we have affirmed DOR's practice of permitting applicants to cure defects in an application prior to actual issuance of a license. *Tokumoto v. Department of Revenue* (1994), 264 Mont. 56, 869 P.2d 782.
2. ¶Identification of the location where the beer/wine license will be used, on the other hand, is an element to be weighed when balancing applicants' qualifications and the relative degrees to which their proposals serve public convenience and necessity. In its order, the District Court elaborated:

Kiser's failure to identify a location did not bar his consideration. It did, however, frustrate the ability of the public and the hearing examiner to weigh Kiser's application against the others. The hearing examiner was unable to determine what advantages might be received from issuing the license to Kiser's nebulous concept as no location was available for comparison. Furthermore, the public needed to know where Kiser's business would be located should he be issued the license. Without that information, members of the public would be unable to determine whether they might want to oppose Kiser's application.

We agree, and we hold that the distinction made between enforcement of the location requirement and enforcement of the citizenship requirement is not clearly erroneous.

1. ¶Finally, without citing authority on point, Kiser asserts that requiring him to secure a location for his proposed establishment before his application will be fully considered violates equal protection guarantees. He asserts that the procedure used in this case discriminated against potential applicants based upon the social condition and economic status of whether they were Gallatin County property owners or lessees. He also asserts that the DOR's procedures discriminate against applicants for licenses who do not own a going concern, in favor of those who do. He says this effectively prevented economically disadvantaged people from receiving the benefit of an asset of significant value.

2. ¶ The first prerequisite to a meritorious equal protection claim is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. *State v. Renee*, 1999 MT 135, ¶ 27, 57 St.Rep. 545, ¶ 27. Under the requirements as here interpreted by DOR, an applicant need not be a property owner; the applicant need only have identified a location where the license will be used. Because Kiser has not described a manner in which similarly situated classes receive different treatment under the location requirement for beer/wine license applicants, he has not made a case for violation of his right to equal protection under the law. Nor has he shown it unreasonable to require an applicant for a liquor license to specify a proposed or existing location for purposes of determining whether the business will serve public convenience and necessity.

1. ¶We affirm the judgment of the District Court.

/S/ J. A. TURNAGE

We concur:

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART