
DA 06-0668

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 298

YVONNE OWENS, d/b/a DUMAS WALKERS
COWBOY BAR & SALOON,

        Petitioner and Appellant,

   v.

MONTANA DEPARTMENT OF REVENUE,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DV 02-539A
                Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Yvonne M. Owens (Pro Se), Kalispell, Montana

        For Appellee:

                Michele R. Crepeau, Special Assistant Attorney General, Helena, Montana

                              Submitted on Briefs:  August 9, 2007

                                    Decided:  November 15, 2007

Filed:

                                Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Yvonne Owens (Owens) appeals from the order and judgment of the Eleventh Judicial District Court, Flathead County, affirming the Final Agency Decision made by the Director of the Department of Revenue (Director) to revoke her all-beverages license.   We affirm.

¶2     Owens raises a number of issues for the first time on appeal that we decline to review. Generally, this Court will not address issues that were not raised before the district court. *Wheelsmith Fabrication v. Dept. of Labor*, 2000 MT 27, ¶ 11, 298 Mont. 187, ¶ 11, 993 P.2d 713, ¶ 11.   We need to address only whether the District Court correctly affirmed the Director's decision to revoke Owens's all-beverage license.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     Owens applied for an all-beverages license in April of 1996 for Flathead County. The Department of Revenue (Department) may award a county license only for those locations whose nearest entrance sits more than five miles from the nearest city limit.  Section 16-4-201, MCA.  Owens provided in her application a Certified Survey Affidavit signed by a private licensed land surveyor named Christopher Balstad, Jr. (Balstad) to demonstrate compliance with this requirement.  The affidavit asserted that the premises sat "more than five miles from the incorporated city of Kalispell."   The Department approved the application based on this information and Owens received the license.

¶4     Montana Department of Justice Investigator Andrew Brinton (Brinton) received three separate contacts in March of 1998 alleging a problem with Owens's license, including a charge that her establishment was not located beyond the five mile requirement.  Brinton

learned that Balstad had measured the distance for the original application merely by taking a scaled reading from a map.

¶5 Brinton solicited three bids for conducting a land-based survey to confirm whether Owens's bar satisfied the distance requirement. The successful bidder, Eby and Associates of Kalispell, measured the radial survey distance and determined that the bar's nearest entrance sat 4.911 miles (470 feet short of 5 miles) from the nearest boundary of the city limits of Kalispell. The Department notified Owens that it was revoking her license based upon the incorrect information in her application and her noncompliance with the distance requirement.

¶6 Owens contested the revocation before a hearing examiner pursuant to § 2-4-611, MCA. Tom Sands (Sands), the former owner of the property, testified. Sands, a licensed surveyor who had performed numerous certified surveys for liquor license applications, knew that an establishment must sit five miles outside of city limits in order for an applicant to obtain a county all-beverages license. Sands testified that he knew that Owens intended to use the property for a bar, and that he believed he had informed her that the property sat within five miles of the city limits.

¶7 Balstad testified that he took his measurement by scaling the distance on a map. He testified that he went to the City Planner's Office in Kalispell to obtain the map and to determine the location of the city boundary. Balstad testified that the city zoning administrator, Brian Wood (Wood), showed Balstad the location of the Kalispell city limit. Balstad testified that he used an engineer's ruler to measure the distance from the city limit to Owens's property. Balstad also testified that he did not use the nearest door entrance as

3

his measuring point, but instead measured from the property boundary closest to the Kalispell city limits.

¶8 Wood testified that Balstad came to his office to measure the distance of the property from the Kalispell city limit. Wood testified that his primary responsibility in their exchange constituted giving accurate information to Balstad regarding the existing city boundary. Wood testified that Balstad made no determination regarding the property's compliance with the five mile distance requirement on the initial visit to the City Planner's Office. He testified that he and Balstad discussed Balstad's "conclusion" that the property sat beyond the five mile radius on a subsequent visit. Wood testified that he concurred in that conclusion.

¶9 The hearing examiner heard testimony from both Eby and surveyors testifying on behalf of Owens, most notably Balstad himself, regarding the imprecise nature of scaling from a map. In contrast, both Eby and another surveyor present on behalf of Owens, testified as to the high degree of precision attainable with the equipment and methods employed by Eby. Eby testified in detail as to the equipment she used and her methodology. The hearing examiner recommended that the Director affirm the revocation. Owens objected.

¶10 Owens and the Department filed briefs and presented argument to the Director. The Director adopted the hearing examiner's findings of fact and recommendation without modification in the Final Agency Decision and revoked Owens's license. The Director pointed to the substantial evidence supporting the hearing examiner's findings as detailed in

the 44-page recommendation. Owens sought judicial review and the District Court upheld the Department's revocation.

¶11 The District Court based its initial order on documents provided by the parties as the Department had failed to transmit the administrative record. Owens appealed. We dismissed the appeal without prejudice to provide the District Court the opportunity to make its decision based upon the entire administrative record. *Owens v. Montana Dept. of Revenue*, 2006 MT 36, 331 Mont. 166, 130 P.3d 1256. The District Court again affirmed the Department's decision to revoke the all-beverages license after reviewing the entire record, including the hearing transcript and the parties' briefs. This appeal followed.

**STANDARD OF REVIEW**

¶12 We review agency findings to determine whether they are clearly erroneous. Section 2-4-704(2)(a)(v), MCA. We review an agency's conclusions of law to determine if they are correct. *Hofer v. Montana DPHHS*, 2005 MT 302, ¶ 14, 329 Mont. 368, ¶ 14, 124 P.3d 1098, ¶ 14. The same standard of review applies to "both the District Court's review of the administrative decision and our subsequent review of the District Court's decision." *Hofer*, ¶ 14.

¶13 The scope of our review is narrow in considering the Director's factual findings. *Ramage v. Dept. of Revenue*, 236 Mont. 69, 74, 768 P.2d 864, 867 (1989). We may not substitute our judgment for that of the agency as to the weight of the evidence. Section 2-4-704(2), MCA. We employ a three-part test to determine whether an agency's findings of fact are clearly erroneous: (1) we review the record to see if substantial evidence supports the findings, (2) if substantial evidence supports the findings, we determine if the agency

5

misapprehended the effect of the evidence, and (3) if both of the above are satisfied, we still may decide a finding is clearly erroneous if a review of the record leaves the Court with the definite and firm conviction that a mistake has been committed. *Kiser v. State, Dept. of Revenue*, 1999 MT 228, ¶ 7, 296 Mont. 93, ¶ 7, 987 P.2d 363, ¶ 7.

## DISCUSSION

¶14 Owens contends that the Director lacked sufficient evidence to determine that her property sat within the five mile radius. She also contends that the Director lacked sufficient evidence to determine that her application contained false information. She further asserts that the Director misapprehended the effect of the evidence in deciding to revoke her license.

¶15 The hearing examiner set forth his findings of fact in great detail after conducting a thorough hearing. The examiner found that Sands, the seller of the property, had put Owens on notice that the property might not comply with the distance requirement. The examiner heard testimony from both sides regarding the potential for error in the scaled map measurement performed by Balstad.

¶16 Balstad testified that he had measured from Owens's nearest property boundary rather than from the nearest door entrance. The administrative rules governing the applications, however, define "premises" as the actual building and areas outside, and attached to, the licensed buildings to which patrons have free access and where the preparation, sale, service or consumption of alcohol occurs. Admin. R. M. 42.13.111(7)-(8). Thus, the hearing examiner heard testimony that Balstad not only employed an unreliable methodology, but that he also used an invalid landmark in taking his measurement.

6

¶17     Witnesses for Owens and the Department spoke to the reliability of Eby's land-based survey. The examiner heard no testimony to refute Eby's determination that the distance was less than five miles. The examiner found that Balstad's survey was unreliable and that Eby's land-based survey accurately measured the distance at 4.911 miles. Consequently, the examiner found that Owens had received invalidly a county license despite the fact that her property sat within the five mile radius. The examiner also found that Owens's original application included false information in that it asserted that the proposed location sat beyond the five mile limit. The Director adopted all of these findings without modification. Substantial evidence supports the Director's findings and nothing in the record indicates that the Director misapprehended the effect of these findings.

¶18     Owens next asserts that the Director misapplied the statutes and administrative rules concerning all-beverages licenses. As outlined in § 16-4-201, MCA, establishments operating with county all-beverages licenses must sit in unincorporated county areas, and the nearest entrance of the premises must be at least five miles from incorporated cities or towns. The governing administrative rules require applicants to provide a sworn statement or affidavit from a surveyor or government official attesting to the "exact distance from the nearest corporate boundary to the proposed premises . . . ." Admin. R. M. 42.12.130(2). The agency may revoke the license if it finds that an applicant made a false statement in any part of the original application. Sections 16-4-402(3)(a), 16-4-406(2)(b), MCA.

¶19     Owens filed a Notice of Supplemental Authority during this appeal. Owens directed this Court's attention to an amendment to § 16-4-402, MCA, enacted by the 2007 legislature. Section 1, Ch. 257, L.2007. The amendment prohibits the Department from revoking a

7

license on the basis of a false statement in an application if the statement "is based upon a verifiable assertion made by a governmental officer, employee, or agent that an applicant relied upon in good faith . . . ." Section 1, Ch. 257, L.2007; § 16-4-402(3)(b), MCA. The provision applies to all revocation proceedings that "have not been finally adjudicated on . . ." as of April 26, 2007. Section 3, Ch. 257, L.2007.

¶20     Owens claims that she based the statement in her application regarding the situs of the property upon a "verifiable assertion" made by Wood, the city zoning administrator. She contends that she relied in good faith on Wood's concurrence that her property met the five mile distance requirement. She asserts that the Department cannot revoke her license based upon her good faith reliance.

¶21     The Department did not revoke Owens's license, however, solely on the basis of the false statement included in her application. The Department correctly noted that the quota provisions for all-beverages licenses also invalidated Owens's license. Section 16-4-201, MCA, constrains the Department's ability to issue all-beverages licenses when administering the program. The quotas set forth in § 16-4-201, MCA, limit the number of city licenses that the agency can issue. The Department may not issue licenses to applicants who do not satisfy the distance requirements. Section 16-4-201, MCA.

¶22     The hearing examiner found that Owens's bar sat within five miles of the nearest city limit of Kalispell. This finding conflicted with Owens's survey affidavit. The examiner's finding revealed not only the presence of false information in Owens's application, but also that the Department had issued invalidly a county license for an establishment that required a city license. The Director correctly concluded that the statutory and administrative

8

guidelines allowed for the revocation of Owens's license. The District Court, in turn, correctly affirmed the Director's application of the law. We will not disturb that decision.

¶23 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER

Justice Patricia Cotter dissents.

¶24 I dissent from the Court's blithe dismissal of Owens's claims. I would reverse the District Court's judgment affirming the Final Agency Decision and remand with instructions to reinstate Owens's license.

¶25 The Court offers two bases for its decision. The first—that there was a false statement included in Owens's application justifying the revocation—was effectively dealt a death blow by the recent amendment to § 16-4-402, MCA, as referenced in ¶ 19 of the Court's Opinion. The amendment provides that if a false statement in an application is based upon a verifiable assertion of a governmental agent upon which an applicant relied in good faith, the Department may not revoke a license on the basis of such a false statement. This amendment applies by its terms to this case, as these revocation proceedings have not yet been finally adjudicated (Opinion, ¶ 19), and is dispositive of the "false statement" grounds for revocation.

¶26	As Owens points out and this Court concedes, Brian Wood, the city zoning administrator, concurred with Balstad's conclusion that the property sat beyond the 5-mile radius. Opinion, ¶ 8. Woods testified during the administrative hearing of March 8-9, 2001, to this effect, confirming that he and Balstad together performed a "fairly simple mathematical procedure" using the scale of the USGS maps to determine where the 5-mile line would be, and further that he concurred in the conclusion that the property in question was beyond the 5-mile line. Owens and Balstad had every right to rely on this assertion. Thus, Owens has demonstrated on the record "a verifiable assertion made by a governmental officer, employee or agent" upon which she was entitled to and did rely in good faith. Under the law as amended, therefore, any false statement as to distance may not be used as a basis for revocation of her license.

¶27	Seemingly conceding the preclusive effect of this statutory change (Opinion, ¶ 21), the Court offers an alternative conclusion, that being that the quota provisions for all-beverage licenses also invalidated Owens's license. The Court states that because "the Department had issued invalidly a county license for an establishment that required a city license," the Director correctly concluded that Owens's license should be revoked. Opinion, ¶ 22. With all due respect, this conclusion is both unfair and wrong. It is unfair because the reasoning is circular—the argument that the license was invalid rests upon the "false statement" grounds eliminated by the statutory amendment noted above. Moreover, any mistake ostensibly made was that of the Department, and not Owens. More importantly, it is wrong because in 1997, the City of Kalispell informed the Department that as a result of an annexation, Owens's premises was now located within the corporate boundaries of Kalispell,

10

thus requiring Owens to obtain a City license. Owens proceeded to obtain a City license as directed by the Department, paying twice the fee for the privilege when she renewed her license the following year. Therefore, any problem ostensibly created by virtue of the erroneous issuance of a County license was eliminated **by the Department** when it instructed Owens to secure a City license and she did so.

¶28 Owens jumped through every administrative hoop required, securing all approvals and the license needed to proceed with the construction of her bar. Justifiably assuming that her license was valid, she then spent 13 months and considerable money in improving the premises. The revocation of her license years after the fact is neither just nor legally supportable. I would therefore reverse and remand with instructions to reinstate Owens's license. I strongly dissent from our refusal to do so.

/S/ PATRICIA COTTER

11