FILED

May 10 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0526

DA 15-0526

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 105

MICHAEL H. PERETTI and SHELLEY PERETTI,

          Petitioners and Appellees,

    v.

STATE OF MONTANA,
DEPARTMENT OF REVENUE,

          Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                    In and For the County of Flathead, Cause No. DV-13-1210A
                    Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Amanda L. Myers, Special Assistant Attorney General, Montana
                Department of Revenue, Helena, Montana

        For Appellees:

                Nathan G. Wagner, Datsopoulos, MacDonald & Lind, P.C.,
                Missoula, Montana

Submitted on Briefs:  March 30, 2016

Decided:  May 10, 2016

Filed:

                                       Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    The State of Montana, through the Department of Revenue (DOR), appeals from the District Court's Order and Rationale dated June 29, 2015. We reverse.

¶2    We restate the issues on appeal as follows:

*Issue one: Did the District Court err in reversing the order of the State Tax Appeal Board concerning the valuation of the property at issue?*

*Issue two: Did the District Court err in awarding administrative trial costs to the Taxpayers?*

*Issue three: Did the District Court err in ordering DOR to return all taxes paid under protest?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    This is a dispute between property owners Michael and Shelley Peretti and the DOR over the appraised value of their .461 acre residential lot with 159 feet of Flathead Lake frontage in Lakeside, Montana. DOR's original appraisal for the tax year 2012 was $1,356,201 for the land and $166,980 for the improvements. The Perettis appealed this valuation to the Flathead County Tax Appeal Board (County Board) in May 2012. They contended that the appraised value failed to account for a deterioration of market values and that DOR relied upon comparable sales from exclusively residential areas unlike the commercial location of the property at issue. The County Board heard the appeal in January 2013 and reduced the value of the land to $1,192,500 and the value of the improvements to $125,000.

¶4    The Perettis appealed that decision to the State Tax Appeal Board ("STAB"), contending that the appraised value was still too high, requesting a reduction to $900,000

2

for the land and $60,000 for the improvements. STAB conducted an evidentiary hearing in September 2013.

¶5 STAB heard this appeal pursuant to its statutory responsibilities, §§ 15-2-201 and -301, MCA. Montana law requires that property be assessed at 100% of its market value, which is the value at which it would change hands between a willing buyer and seller. Section 15-8-111, MCA. The relevant time for determining the market value of the property at issue here was as of July 1, 2008. Admin. R. M. 42.18.124(b).

¶6 The Perettis presented the testimony of James Kelley, a licensed real estate appraiser. He described the land as residential property that was close to commercial properties and condo developments. He opined that this proximity diminished the value of the land for residential purposes and assumed that no purchaser would keep the existing improvements nor would a purchaser build a high-priced home so close to town. Kelly used only a few other comparable properties in his analysis, relying heavily upon the sales of two non-lakefront properties. He determined that prices had increased 13.5% per year during the valuation period, while also contending that prices had declined. He concluded that the land at issue should be valued at $960,000 and that the improvements had no value.

¶7 The Perettis also presented the testimony of Edwin Berry, who had "math and physics credentials and experience in modeling land valuation computer software." He criticized the computer-based land pricing model that DOR used to determine property values. He opined that DOR's results were "demonstrably weak" because they relied on a formula that "produced an $R^2$ of just 17.98% suggesting inaccurate value projections."

3

STAB allowed the property owners to present Berry's testimony even though the Perettis had refused to provide any meaningful information about him or his testimony prior to hearing, despite requests that they do so.

¶8 STAB allowed DOR to submit a post-hearing rebuttal to Berry from its Region 1 Manager, Scott Williams. Williams explained that Berry's opinions incorrectly assumed that DOR used a "single variable to create the linear regression" while it was clear that DOR used three variables. Further, Williams stated that the true $R^2$ value was 83.33%, indicating a reliable formula. Williams was unable to determine any reason for some of Berry's calculations except that they "steadily lowered the valuation in his clients favor."

¶9 DOR appraiser Dan Lapan explained the agency's computer-assisted land valuation program, which in this case gathered information on 29 waterfront land sales that had occurred "in the neighborhood" since the last appraisal. The result showed a "$9,801 average front foot value for lakefront property." He also discussed two other sales of lakefront property proximate to commercial areas that maintained values of over $9000 per front foot. He opined that the information DOR relied upon showed that proximity to commercial property did not reduce lakefront property values, and that lakefront values had not fallen since the valuation date (June 1, 2008). Lapan also produced photos of one of the comparable properties heavily relied upon by Kelley, showing that it was "steep [and] boulder-covered" and not at all comparable to the "flat and easily built-upon" property at issue.

¶10 STAB issued its findings of fact and conclusions of law on November 1, 2013. STAB concluded that while DOR's appraisal is presumed to be correct, the Department

4

bears a burden to provide "documented evidence to support its assessed values." STAB found that DOR's explanation of its "comprehensive computer assisted data" that included 29 comparable sales was "more persuasive than the three comparable sales used by Mr. Kelley." STAB found that the Perettis presented no evidence to support their contention that the location of the property had a negative effect on its value. STAB found that DOR's evidence was "generally more persuasive" than the owners' evidence as to value. STAB further found that Kelley's reliance upon post-valuation date sales was not allowed by Montana law and that his assumptions that the existing buildings had no value were subjective assessments of what a future buyer might do. STAB concluded by finding that Kelley's testimony was limited and subjective and was "less credible" than the evidence presented by DOR.

¶11 STAB found that Mr. Berry "completely misunderstood" the DOR computer model and that his criticisms were "not accurate." STAB found that Berry "discarded sale and trending data points until he got the result he sought," which was a lower value for the property. STAB found that Berry "misinterpreted" the reliability of the DOR system, and that his "critique of the DOR valuation model [was not] credible."

¶12 STAB upheld the County Board's determination of the value of the property. The Perettis petitioned for judicial review in November 2013. The parties completed briefing in July 2014, and the District Court entered its order reversing the STAB decision on July 1, 2015. The District Court disagreed with STAB's weighing of the evidence and its determinations of witness credibility. The District Court determined that the methodology of the DOR "resulted in a severely skewed assessment" of the value of the

5

property, and that Mr. Lapan's testimony was not credible or persuasive as to important issues. The District Court similarly determined that Mr. Williams' testimony was not credible regarding important issues that he covered in his testimony.

¶13 The District Court concluded that STAB committed clear error by finding that DOR's valuation of the property was more persuasive than Mr. Kelley's valuation. The District Court evaluated and weighed the testimony from the STAB hearing and found that the County Board property value upheld by STAB was clearly erroneous. The District Court ordered STAB to accept the $960,000 valuation from Mr. Kelley's testimony, and ordered DOR to return any taxes that the Perettis paid under protest.

**STANDARD OF REVIEW**

¶14 This is an appeal from a decision of a district court conducting judicial review of a decision of the State Tax Appeal Board concerning a Department of Revenue appraisal of real property for property tax purposes. In such cases the appraisal reached by the Montana Department of Revenue is presumed to be correct, and the burden is upon the taxpayer to overcome this presumption, *Farmers Union Central Exchange v. DOR*, 272 Mont. 471, 476, 901 P.2d 561, 564 (1995). Courts should not act as an authority on tax matters because tax appeal boards "are particularly suited for settling disputes over the appropriate valuation of a given piece of property, and the judiciary cannot interfere with that function." *DOR v. Grouse Mtn. Development*, 218 Mont. 353, 355, 707 P.2d 1113, 1115 (1985).

¶15 The role of a district court conducting judicial review of an administrative decision is limited to a review "confined to the record" of the agency, and the court does not act as

6

a trier of the facts. Section 2-4-704(1), MCA; *Mercer v. McGee*, 2008 MT 374, ¶ 22, 346 Mont. 484, 197 P.3d 961. A district court should review a STAB decision to determine whether the Board's findings of fact are clearly erroneous and whether its conclusions of law are correct. A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the trier of fact misapprehended the effect of the evidence; or if a review of the record leaves the court with the "definite and firm conviction" that a mistake has been made. We apply these same standards when reviewing the district court's decision on appeal. *Robinson v. DOR*, 2012 MT 145, ¶ 10, 365 Mont. 336, 281 P.3d 218. A district court may not substitute its judgment for the judgment of STAB as to the weight of factual evidence, § 2-4-704(2), MCA; may not engage in a "wholesale substitution" of its opinion for the opinion of the agency, *O'Neill v. DOR*, 2002 MT 130, ¶¶ 22-23, 310 Mont. 148, 49 P.3d 43; and may not re-weigh the evidence on questions of fact, *Benjamin v. Anderson*, 2005 MT 123, ¶ 37, 327 Mont. 173, 112 P.3d 1039. "Assessment formulations" by STAB should be upheld unless there is a clear showing of an abuse of discretion. *O'Neill*, ¶ 23.

## DISCUSSION

¶16 *Issue one: Did the District Court err in reversing the order of the State Tax Appeal Board concerning the valuation of the property at issue?*

¶17 It is clear that the District Court's decision rests upon a re-weighing of the evidence submitted at the STAB hearing, and a re-determination of the credibility of witnesses heard by STAB. While the District Court explains its decision in terms of whether the STAB decision was "clearly erroneous," it is clear that there was substantial

evidence in the record to support STAB's decision. Under Montana law, a district court sitting in judicial review of a STAB decision may not re-weigh the evidence or re-determine witness credibility to achieve a different result. *Mercer,* ¶¶ 21-22; *Benjamin*, ¶ 37. Montana law "does not contemplate a wholesale substitution of the District Court's opinion for that of the agency." *O'Neill*, ¶ 23; § 2-4-704, MCA.

¶18 Administrative findings of fact may not be disturbed on judicial review if they are supported by substantial evidence in the record. Substantial evidence is more than a mere scintilla of evidence but may be less than a preponderance of the evidence when viewed in a light most favorable to the respondent. *Taylor v. State Fund*, 275 Mont. 432, 440, 913 P.2d 1242, 1246 (1996); *Benjamin*, ¶ 12. Findings of fact can be based upon substantial evidence despite the fact that there was evidence that may have supported a different result. *Benjamin*, ¶ 55.

¶19 The STAB adequately described the evidence that it relied upon in reaching its decision as well as describing why it could not rely upon the evidence produced by the Perettis. STAB found that DOR's appraisal was based upon a proven computer model that incorporated data on the verified sales of 29 other properties to reach the appraised valuation. The DOR appraisal, under established law, was presumed to be correct and the Perettis bore a substantial burden to disprove it. *Farmers*, 272 Mont. at 476, 901 P.2d at 564. Taxpayers have not demonstrated that STAB's determination of witness credibility was clearly erroneous. The District Court decision to reverse the STAB decision is therefore reversed.

¶20 As to Issues two and three, because we reverse the District Court and reinstate the STAB decision on the taxable valuation of the Peretti property, we also reverse the District Court's award of costs to the Perettis and its direction that the DOR refund any taxes paid in protest.

## CONCLUSION

¶21 The District Court is reversed and its Order and Rationale is vacated. The STAB decision is reinstated.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE