No. 96-525

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


WASTE MANAGEMENT PARTNERS OF
BOZEMAN, LTD., d/b/a THREE RIVERS
DISPOSAL COMPANY,

Appellant,

v.

MONTANA DEPARTMENT OF PUBLIC
SERVICE REGULATION, MONTANA
PUBLIC SERVICE COMMISSION, and
HARRY ELLIS, d/b/a/ CUSTOMIZED SERVICES,

Respondents.


APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William Andrew Wilson, Denver, Colorado; John Alke, Hughes, Kellner,
Sullivan & Alke, Helena, Montana


For Respondent:

Denise Peterson, Montana Public Service Commission, Helena, Montana;
Jerome Anderson, Helena, Montana



Submitted on Briefs: May 15, 1997
Decided: August 26, 1997
Filed:


_____
Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Appellant Three Rivers Disposal Company (Three Rivers), formerly Waste Management Partners of Bozeman, Ltd., appeals from the decision issued by the First Judicial District Court, Lewis and Clark County, affirming upon judicial review the order of the Montana Public Service Commission (PSC) granting Harry Ellis d/b/a Customized Services (Ellis) a Class D certificate to transport garbage in Madison and Gallatin Counties. We affirm the District Court.

The following issues are presented on appeal:

1. Did the PSC apply the correct standard for granting Class D certification?

2. Did the District Court err when it affirmed the PSCþs finding that Ellis was a fit applicant?

3. Did the District Court err when it affirmed the PSCþs finding that the public convenience and necessity required that it authorize Ellisþ service?

4. Did the District Court err when it affirmed the PSCþs finding that Three Rivers would not be impaired by granting Ellisþ application?

5. Did the PSC err by failing to follow its own precedent, and if so, did it err by failing to provide a reasoned explanation for its departure from that precedent?

FACTUAL BACKGROUND

Three Rivers has hauled the majority of garbage in Gallatin and Madison Counties since 1983. On three occasions, Ellis has filed an application with the PSC for a Class D certificate to transport waste products on routes within those same counties and thereby directly compete with Three Rivers. Each time, Three Rivers has protested Ellisþ application on the grounds that granting the certificate would infringe upon its area of operations and harm both it and its customers.

Ellis d/b/a Rozel Corp. filed his first application in 1984. The PSC denied that application, finding that the grant of authority would have a negative impact upon Three Rivers and the public. (Ellis I) It found that the þpublic convenience and necessityþ for an additional garbage service had not been established, because there was no evidence of unmet demand and few concerns regarding the adequacy of Three Riversþ service or its rates. Additionally, the recent history of the area demonstrated that competition would adversely impact Three Rivers and the consumer. The publicþs need for stability at that time outweighed any advantages brought by competition. The Montana Supreme Court upheld the PSCþs decision in Rozel Corp. v. Dept. of Pub. Serv. Regulation (1987), 226 Mont. 237, 735 P.2d 282.

Ellis filed a second application in 1987. (Ellis II) The PSC rejected his

application without a hearing.

The third application, which is the subject of this appeal, was filed on January 20, 1994. After conducting hearings in Bozeman, Montana, on April 13 and 14, 1994, and in Ennis, Montana, on May 11, 1994, the PSC granted Ellisþ application on December 9, 1994. The PSC found that Ellis was fit to provide service; that there was substantial unmet consumer need for additional service; that Three Rivers would not be harmed by the grant of the application; and that competition would promote the public interest with improved service. Three Rivers moved the PSC to reconsider its order, which the PSC denied on April 24, 1995.

Three Rivers petitioned for judicial review of the PSCþs decision to the First Judicial District Court, Lewis and Clark County. The District Court affirmed the PSC, holding that the PSC properly considered Ellisþ application and that the facts presented in 1994 were vastly different from those in 1984 when the PSC denied Ellisþ application. It further held that substantial credible evidence supported the PSCþs determinations.

Three Rivers appeals from the District Courtþs decision.

STANDARD OF REVIEW

Section 2-4-704, MCA, sets forth the standards for judicial review of an administrative agencyþs decision. Under those statutory standards, conclusions of law will be reversed if they are incorrect. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603. The Court defers to an agencyþs interpretation of a statute that it administers. Norfolk Holdings v. Dept. of Revenue (1991), 249 Mont. 40, 44, 813 P.2d 460, 462.

An agencyþs findings of fact will be reversed only if they are clearly erroneous. Steer, Inc., 803 P.2d at 603. In Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 820 P.2d 1285, the Court adopted a three-part test to determine if a finding is clearly erroneous. First, the Court will review the record to see if the findings are supported by substantial evidence. If they are, the Court will next determine whether the finder of fact has misapprehended the effect of the evidence. Third, the Court will review the record to determine whether it is left with the þdefinite and firm conviction that a mistake has been committed.þ DeSaye, 820 P.2d at 1287 (citing U.S. v. U.S. Gypsum Co. (1948), 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746).

ISSUE ONE

Did the PSC apply the correct standard for granting Class D certification?

As stated earlier, the Court reviews an agencyþs conclusions of law to determine whether its interpretation of the law is correct. Steer, Inc., 803 P.2d at 603.

Section 69-12-323, MCA, sets forth the factors the PSC must consider when rendering a decision on an application for a Class D motor carrier certificate to

transport
waste materials:
(2)(a) If after hearing upon application for a certificate, the commission finds from the evidence that public convenience and necessity require the authorization of the service proposed or any part thereof, as the commission shall determine, a certificate therefor shall be issued.  In determining whether a certificate should be issued, the commission shall give reasonable consideration to the transportation service being furnished or that will be furnished by any railroad or other existing transportation agency and shall give due consideration to the likelihood of the proposed service being permanent and continuous throughout 12 months of the year and the effect which the proposed transportation service may have upon other forms of transportation service which are essential and indispensable to the communities to be affected by such proposed transportation service or that might be affected thereby.

(b)  For purposes of Class D certificates, a determination of public convenience and necessity may include a consideration of competition.

The PSC interpreted  69-12-323, MCA, as requiring it to address five factors when considering Ellis' application.  Those factors are:

1.   Is the applicant fit and able to perform the proposed service?

2.   Does the public convenience and necessity require the authorization of the proposed service?

3.   Can and will existing carriers meet the public need for the proposed service?

4.   Would the proposed service have an adverse impact on existing transportation services?

5.   (discretionary for Class D applications, only)  If there is a public need for the service and applicant is fit to provide the service (even if existing carriers could meet the need or might be harmed by granting the application), would competition with the existing carriers promote the public interest?  (Emphasis added.)

In summarizing these factors, the PSC concluded that an applicant "must show that the public convenience and necessity require the proposed service," and that the PSC "may consider competition as a factor in determining public convenience and necessity." Three Rivers argues that the PSC's interpretation of the factors it must consider is incorrect, and the District Court erred when it implicitly embraced them. Specifically, it takes issue with the emphasized portion of the fifth factor outlined above wherein the PSC stated it had discretionary authority to evaluate whether competition provided by a fit applicant would promote the public interest, even if existing carriers could meet the need or might be harmed.  It argues that the PSC can consider the benefits of

competition to the public interest only after first finding that the existing services are inadequate, that there will be no economic impairment to the existing services, and that the applicant is fit.

We first note that Three Riversþ concerns are hypothetical only, because in fact, the PSC did find that Three Riversþ service was inadequate; it did find that Three Rivers would not suffer economic impairment by the grant of the additional authority; and it did find that Ellis was a fit applicant.  Moreover, before conducting any evaluation of competition, the PSC made the threshold determination that the applicant was fit.  Thus, even were this Court to accept Three Riversþ analysis of the PSCþs decision and to adopt Three Riversþ arguments, Three Rivers would not prevail.

In any event, we hold that PSC employed the correct standard.  The heart of Three Riversþ contentions actually appears to center on the interplay between the consideration of competition as a factor in granting authority and how that consideration affects Three Rivers economically.  As Three Rivers itself correctly stated in Rozel Corp., the legislature has chosen to partially regulate the garbage industry in Montana. Rozel Corp., 735 P.2d at 285.  By enacting Section 69-12-323(2)(b), MCA, it has given the PSC the discretion to consider competition in order to handle potential harmful monopoly situations.  Rozel Corp., 735 P.2d at 285.  Consideration of competition may be beneficial in some cases, although certainly not in all cases.

Inherent in the concept of competition is the notion that the new applicant may take away some business of the existing transport service.  This alone will not mandate that the PSC deny the application.  Rather, the issue is whether under the particular factual circumstance of the case, competition would impose undue hardship and impair the existing transportþs ability to provide service to an extent contrary to public interest. This can only be decided on a case-by-case basis in conjunction with a consideration of the other elements  the PSC outlined above.

When determining whether the public convenience and necessity requires the PSC to authorize an additional authority, the legislature placed no limits on the order in which the PSC must evaluate competition as Three Rivers suggests.  The PSC can properly consider competition as one additional factor in assessing the public convenience and necessity.

In this case, after considering the threshold issue of whether Ellis was a fit applicant, and after finding that there was an unmet public need,  the PSC then properly weighed  the particular factual circumstances to determine whether competition would be beneficial to the public convenience and necessity.  It did not view competition as

a stand-alone controlling element, but rather as only one factor in the context of the principles of motor carrier regulation. We hold that the PSC used the proper legal standards. .

ISSUE TWO

Did the District Court err when it affirmed the PSCþs finding that Ellis was a fit applicant?

When evaluating whether an applicant is fit, willing and able to provide service, the PSC considered the following factors:

1.    The financial condition of applicant;

2.    The intention of the applicant to perform the service sought;

3.    The adequacy of the equipment the applicant has to perform the service;

4.    The experience of the applicant in conducting the service sought; and

5.    The nature of the previous operations, if there are allegations of illegal operations.

Three Rivers asserts that Ellis was not a fit applicant, because (1) he owns only two older garbage trucks--a 1975 Del Rio and a 1983 Ford; (2) he does not employ a full-time mechanic; and (3) his net worth is only $293,000. However, the PSC found no evidence that Ellisþ equipment was in disrepair, required a full-time mechanic, or would otherwise fail to meet the garbage rounds. Additionally, the performance of the job duties does not require garbage haulers to own the newest or most technologically advanced equipment. Although his equipment may be older, Ellisþ financial records indicated that he had the capability to operate and maintain his present equipment and to acquire new equipment as needed. Additionally, with regard to the other criteria considered by the PSC, Ellis intends to perform garbage-hauling services year-round. He also had many years of prior experience hauling garbage in Texas and even in Montana on a contract basis.

Three Rivers next claims that Ellis is unfit because Ellis has allegedly operated illegally in the past. Three Rivers first refers to an incident wherein Ellis allegedly hauled garbage without proper authority. However, the PSC found that although Ellis had received a citation for hauling without authority, some of that hauling was actually exempt demolition work. Ellisþ citation was thus reduced upon his appearance in court. The record supports the PSCþs findings. Indeed, according to testimony, the court had dismissed his fine and only ordered Ellis to pay $25.00 in court costs.

Three Rivers also claims that a complaint was issued against Ellis on one other occasion for allegedly violating the Montana Motor Carrier Act. But that evidence was not made a part of the record at the hearings before the PSC, and this Court will not consider it now.

Third, Three Rivers refers to an incident wherein Ellis had allegedly not paid certain workersþ compensation insurance coverage for an employee over a three-month period in 1993. It argues that the PSC abused its discretion in refusing to consider that incident and find Ellis unfit. On appeal, the PSC argues that workersþ compensation issues are not within the PSCþs jurisdiction. The evidence below regarding this allegation is minimal. The record does not reveal whether a claim was even filed against Ellis.

Evidence of illegal activity, even if willful, does not automatically disqualify an applicant. Rather, the PSC has routinely considered bad faith operations as only one element in assessing fitness. See, e.g., Application of Schlegel & Sons Contractors, Inc. (December 23, 1993), Docket No. T-93.41.PCN, Order No. 6247a. The PSCþs position is consistent with that taken by the ICC. See Armored Carrier Corporation v. United States (1966), 260 F.Supp. 612, 615 (E.D.N.Y), affþd., 386 U.S. 778, 87 S.Ct. 1476, 18 L.Ed.2d 524 (1967). In this case, the PSC found that allegations of illegal activity were scant and did not rise to the level of persistent illegal activity sufficient to require the PSC to engage in analysis as to whether they impinged on Ellisþ fitness. Substantial evidence supports the PSCþs decision. Assessing allegations concerning violations of the Motor Carrier Act is peculiarly within the expertise of the PSC. We hold that the PSC did not err in failing to find that either alleged violations of that Act or alleged violations of the Workersþ Compensation Act rose to the level to require the PSC to conduct a detailed analysis of the violations. Moreover, we hold that the PSC was not clearly erroneous in failing to find that they rendered Ellis unfit. The District Court did not err in affirming the PSC.

ISSUE THREE

Did the District Court err when it affirmed the PSCþs finding that the public convenience and necessity required that it authorize Ellisþ service?

When determining public convenience and necessity, the PSC uses the analysis set forth by the Interstate Commerce Commission in Pan-American Bus Lines Operation (1936), 1 M.C.C. 190:

The question . . . is whether the new operation or service will serve a useful public purpose, responsive to a public demand or need; whether this purpose can and will be served as well by existing lines or carriers; and whether it can be served by the applicant with a new operation or service proposed without endangering or impairing the operations of existing carriers contrary to the public interest.

The PSC may additionally consider competition. Section 69-12-323(2)(b), MCA.

Three Rivers argues that the PSC's decision finding that there was a need for Ellis' service was clearly erroneous. It asserts that it was only natural that some of its customers were dissatisfied, but that there was insufficient evidence that its service was inadequate.

To the contrary, however, evidence of Three Rivers' inadequate service and the public need for another garbage hauler was overwhelming. The PSC exhaustively detailed the testimony of approximately 40 witnesses who testified about their dissatisfaction with Three Rivers. In short, Three Rivers' service was spotty and unreliable. It frequently failed to haul away customers' garbage, and when it did, it often left the dumpsters overturned with garbage strewn on the ground. Some customers had to routinely monitor Three Rivers to ensure that the garbage would actually be hauled away on the date and time it was scheduled for pickup. Even though customers complained, Three Rivers frequently charged them for services that were not rendered. Moreover, Three Rivers' staff treated the public with disdain. Many customers testified that when they telephoned Three Rivers to complain, they were treated rudely and with a take-it-or-leave-it attitude.

At least one customer testified he was called a liar when he complained that the garbage was not hauled away. Three Rivers discontinued service to some of the customers who complained. The PSC found that Three Rivers' own witnesses corroborated the public testimony. Specifically, it found that Three Rivers keeps lists of "chronics," tells customers they are wrong, and informs customers who complain that if they do not like it, they can haul the garbage themselves. It allows its staff to persist in treating customers in a derogatory manner.

In spite of the poor service, Three Rivers charged customers dramatic rate increases. For example, the superintendent of one school district testified that rates for the district increased from $216.00 to $459.89 per month without any notice. The mayor of another city testified that Three Rivers approached the city council and proposed a 400% rate increase. In 1993 when negotiations between Three Rivers and the city broke down, the city disassociated itself from Three Rivers. In fact, many of Three Rivers' former residential and commercial customers have been forced to haul their own garbage due to Three Rivers' inconsiderate treatment, unreliable service, and large rate increases.

Based upon this overwhelming evidence, we hold that the PSC's finding that there was substantial unmet shipper need was not clearly erroneous.

Three Rivers points to the PSC's finding that Three Rivers "has the authority, facilities, equipment and financial wherewithal" to provide service to the Gallatin and Madison County customers, and argues that notwithstanding customer complaints Ellis'

application should therefore be denied. But whether the existing service is capable of providing adequate service means nothing if it is unwilling to provide adequate service.

The PSC therefore properly exercised its discretion and considered the element of competition when assessing public need and convenience. It found that Three Rivers had created a niche for competition which Ellis could fill by providing alternative service.

The PSC found, and we agree, that competition in this case will promote the public interest in improving services and perhaps rates, and filling consumer needs that Three Rivers has failed to meet. We hold that the PSCþs findings were not clearly erroneous, and the District Court correctly affirmed its decision.

ISSUE FOUR

Did the District Court err when it affirmed the PSCþs finding that Three Rivers would not be impaired by granting Ellisþ application?

Three Rivers disputes the PSCþs finding that Three Rivers would not be harmed by granting Ellisþ application. It points to the testimony of its executive officer and its principal partner. The executive officer testified that Three Rivers upgraded its services with a variety of modern equipment and a maintenance shop and that lost revenue will hurt its ability to pay for equipment costs. Its principal partner feared that some of its prime customers would utilize Ellisþ services, resulting in a significant financial loss to Three Rivers.

But the PSC found that Three Riversþ operating statement and financial reports indicated that it was þflush with equipment, facilities, [and] staffþ as well as expensive computer equipment with þunnecessary bells and whistles.þ Moreover, Three Rivers has extensive resources. Its gross revenues had increased from $1,200,000 in 1986 to $2,368,000 in 1992. Other parts of Three Riversþ financial reports included costs such as embezzling costs and landfill development costs, which the PSC stated were not the responsibility of the public. Based upon these findings, the PSC concluded that with all its resources, Three Rivers would not be harmed by the grant of Ellisþ application to an extent contrary to public interest.

It is not the function of this Court to weigh the evidence. Our review indicates that the PSCþs conclusions are based upon adequate findings of fact, supported by substantial evidence in the record. We conclude that the PSC gave reasonable consideration to Three Riversþ service. We hold that the PSCþs findings are not clearly erroneous and the District Court correctly affirmed its decision.

ISSUE FIVE

Did the PSC err by failing to follow its own precedent, and if so, did it err by

failing to provide a reasoned explanation for its departure from that precedent?

Three Rivers argues that the PSCþs decision in this case is diametrically opposed to its decision in Ellis I. Citing Atchison Topeka and Santa Fe Railroad Co. v. Board of Trade (1973), 412 U.S. 800, 93 S.Ct. 2367, 37 L.Ed.2d 350, it argues that the PSC therefore had a duty to explain its departure from the prior decision. Having failed to do so, it asserts that the PSCþs decision must be reversed.

It is a well-established principle of agency law that an agency has a duty to either follow its own precedent or provide a reasoned analysis explaining its departure. Atchison Topeka and Santa Fe Railroad Co., 412 U.S. at 808. But in this case, the PSC did not depart from its prior policies and standards. Indeed, its decision in this case is entirely consistent with its decision in Ellis I.

The factual landscape when Ellis I was decided in 1984 differed significantly from that a decade later when it rendered the decision in this case. Ten years ago, there were few concerns about the adequacy of Three Riversþ service or the reasonableness of its rates. There were only a few isolated instances of missed garbage pickups. The majority of the witnesses at the hearing testified that the service was satisfactory. While a few people complained about Three Riversþ rates, the complaints did not lead the PSC to conclude that an additional garbage hauler was necessary. In short, there was insufficient evidence that Three Rivers had provided inadequate service or that public convenience and necessity required additional service. Moreover, the route involved in Ellis I involved primarily Gallatin County, while the route in this case involves both Gallatin and Madison Counties, with some territorial exclusions.

With regard to the element of competition, the PSC correctly noted in 1984 that 69-12-323(2)(b), MCA, gave it discretion to consider competition, and it stated that in some cases the advent of competition would be beneficial to the public interest. Indeed, it expressly stated that the þCommission can conceive of instances where competition would exert a positive influence in the maintenance of good quality service and reasonable rates.þ The PSC also correctly noted, however, that competition in the abstract is insufficient standing alone to justify granting an application. Rather, there must be sufficient evidence in the record based upon the specific facts at hand to establish public convenience and necessity.

Based upon the facts in 1984, the PSC found that competition at that time would be destructive. Recent history had demonstrated that the area needed stability, because competition had produced a negative impact upon both the industry and the consumer.

Three Rivers had been the first company in the decade prior to 1984 that was a healthy carrier, adequately serving the area.  In that same decision, the PSC warned Three Rivers that  þ[t]his is not to say that the public should be prepared to tolerate unmet demand or inadequate service or unreasonable rates should they occur in the future.  [Three Rivers] remains on notice that the Commission retains the power to reexamine the situation and grant a new authority should the circumstances merit it.þ

Ten years later, the PSC determined that the circumstances merited it.  None of the PSCþs standards or application of the law changed, only the facts did.  We therefore hold that the PSC did not depart from established precedent.  The District Court correctly affirmed the PSCþs order.

We affirm the order of the District Court.

/S/  WILLIAM E. HUNT, SR.


We Concur:

/S/  KARLA M. GRAY
/S/  JAMES C. NELSON
/S/  JIM REGNIER
/S/  TERRY N. TRIEWEILER