

DA 16-0439

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 123

SOUTHERN MONTANA TELEPHONE CO.,

        Petitioner and Appellant,

    v.

MONTANA PUBLIC SERVICE COMMISSION,
DEPARTMENT OF PUBLIC SERVICE
REGULATION, an agency of the State of Montana,

        Respondent and Appellee.

LINCOLN TELEPHONE CO.,

        Petitioner and Appellant,

    v.

MONTANA PUBLIC SERVICE COMMISSION,
DEPARTMENT OF PUBLIC SERVICE
REGULATION, an agency of the State of Montana,

        Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis And Clark, Cause Nos. ADV-2015-315 and
CDV 2015-314
Honorable Kathy Seeley, Mike Menahan, Presiding Judges

COUNSEL OF RECORD:

        For Appellant:

                Elizabeth A. Brennan, Brennan Law & Mediation, PLLC, Missoula,
Montana

        For Appellee:

                Justin W. Kraske, Jeremiah Langston, Special Assistant Attorneys General,
Montana Public Service Commission, Helena, Montana

                Peter Michael Meloy, Meloy Law Firm, Helena, Montana

For Amicus Curiae:

Jill Gerdrum, Axilon Law Group, PLLC, Missoula, Montana
(*Attorney for Montana Telecommunications Association*)

Submitted on Briefs:  March 22, 2017

Decided:  May 30, 2017

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 The Montana Public Service Commission requires that certain regulated telecommunications companies publicly disclose the compensation of their executive or managerial employees earning more than $100,000 per year. Southern Montana Telephone Company and Lincoln Telephone Company—both regulated by the Commission—filed motions for protective orders to keep the salary information confidential. The Commission denied the motions, relying in part on a new "rubric" that it developed by which it declared it would judge such motions. Southern and Lincoln each appealed to the First Judicial District Court. In two separate rulings, the District Court affirmed.

¶2 Southern and Lincoln appeal, raising several issues. We reverse on the sole ground that the Commission's "rubric" constitutes a de facto rule subject to Montana Administrative Procedure Act (MAPA) rulemaking requirements.

### PROCEDURAL AND FACTUAL BACKGROUND

¶3 Southern and Lincoln are privately-owned Montana telecommunications companies. They also qualify as "public utilities" and are therefore subject to regulation by the Commission. Sections 69-1-102, -3-101(1)(f), MCA. The Commission possesses the authority to regulate privately-owned companies that provide a "regulated telecommunications service"—like Southern and Lincoln—but it does not regulate "[r]ural telephone cooperatives." Sections 69-3-101(1)(f), -901(5), MCA.

¶4 The Commission certifies certain telecommunications public utilities as "eligible telecommunications carrier[s]" (ETCs) for purposes of the Federal Telecommunications Act of 1996. *See* 47 C.F.R. § 54.201(b) (2016); § 69-3-840(2), MCA. That Act's purpose

3

is, in part, to provide "universal" telecommunications services to "low-income consumers and those in rural, insular, and high cost areas." 47 U.S.C. § 254(b)(3) (2015). The Act establishes the "universal service" fund (USF)—a series of federal subsidies made available to ETCs for the purpose of providing such services. 47 U.S.C. § 254(e). Federal law provides the requirements for ETC certification. 47 U.S.C. § 214(e). Only a company that receives certification as an ETC may be eligible to receive USF subsidies. 47 U.S.C. § 254(e). The Federal Communications Commission delegates to the Commission the authority to certify annually ETCs in Montana. 47 C.F.R. § 54.314; § 69-3-840(1), MCA. The Commission must base its ETC certification on companies' compliance with federal statute. Section 69-3-840(2), MCA. The Commission has certified Southern and Lincoln as ETCs, and each receives federal USF subsidies.

¶5 Pursuant to federal law, the Commission requires all ETCs to apply for recertification annually. Section 69-3-203, MCA. Although all ETCs must submit certain documentation to the Commission for recertification, most are unregulated telephone cooperatives and not public utilities. Only ETCs that are subject to Commission regulation as public utilities—including Southern and Lincoln—must submit "annual reports." Mont. Admin. R. 38.5.2602 (2000). The Commission prescribes the information that ETCs must include in their annual reports.

¶6 Recently the Commission began requiring that privately-owned ETCs disclose in their annual reports the names and compensation information for all executives and managers earning more than $100,000 per year in total compensation. The Commission's

4

purpose in imposing this requirement was to increase transparency by disclosing to the public how ETCs spend the federal USF subsidies that they receive.

¶7 Southern and Lincoln each filed motions for protective orders with the Commission. The motions requested that the Commission permit them to not disclose their employees' compensation information publicly. They agreed to provide the compensation information to the Commission but argued that employee salaries constituted trade secret information and that disclosure would violate the employees' constitutional rights to privacy.

¶8 The Commission denied Southern's and Lincoln's motions for protective orders. It concluded that the compensation information did not constitute a trade secret and that the employees' individual rights to privacy in their compensation did not clearly outweigh the public's right to know how the companies spent federal subsidies. In reaching the latter conclusion, the Commission developed and employed a three-part "rubric by which to judge companies' motions for protective orders" of employee compensation information. Under the rubric, the public's right to know will outweigh the employees' individual privacy in their compensation information when: (1) "the employee is a manager or executive of the telecommunications company"; (2) "the manager or executive has annual compensation that exceeds $100,000"; and (3) "one-fifth or more of [the company's] total Montana revenues originate from sources tied to the company's designation as an ETC"— i.e., from the USF subsidies. The Commission held no hearings or rulemaking proceedings before adopting this rubric, and applied it for the first time in the orders denying Southern's and Lincoln's motions.

5

¶9 Both Southern and Lincoln derive at least one-fifth of their total revenue from federal funds. The Commission thus determined that the compensation information of the companies' executive or managerial employees earning more than $100,000 per year in total compensation would not be "subject to confidentiality." The Commission subsequently denied Southern's and Lincoln's motions for reconsideration.

¶10 Southern and Lincoln each filed petitions for judicial review in the First Judicial District Court. They raised several challenges, including an argument that the Commission's rubric constituted a "rule" under MAPA and that the Commission had unlawfully adopted that rule without adhering to MAPA's rulemaking requirements.

¶11 In separate orders, two different judges affirmed the Commission's orders. Both concluded in relevant part that the Commission's "rubric" did not constitute a "rule" within the meaning of MAPA. In its order in Southern's case, the court explained that the Commission was "not required to initiate rulemaking to determine which factors to apply when balancing an individual's right of privacy versus the public's right to know. An agency's factual determination when conducting a legal analysis prescribed by the Montana Constitution is not a rule." The court stated further in that order that when the Commission "identifies and applies factors with which to balance competing constitutional mandates involving public records, it is not establishing a de facto rule." Southern and Lincoln appealed the court's orders, and their appeals were consolidated.

**STANDARDS OF REVIEW**

¶12 In an administrative appeal, we apply the same standards of review that the district court applies. *Nw. Corp. v. Mont. Dep't of Pub. Serv. Regulation*, 2016 MT 239, ¶ 25,

6

385 Mont. 33, 380 P.3d 787. A court reviews an administrative decision in a contested case to determine whether the agency's findings of fact are clearly erroneous and whether its interpretation of the law is correct. *Nw. Corp.*, ¶ 25.

**DISCUSSION**

¶13 Southern and Lincoln argue that the Commission's rubric establishes a "standard" that "implements" the Commission's "policy" of making ETC federal funding more transparent to the public. They therefore contend that it constitutes a de facto rule within the meaning of MAPA and that the Commission was obligated to comply with MAPA's rulemaking procedures before implementing the rubric.

¶14 The Commission counters that the District Court correctly concluded that the rubric was not a rule under MAPA. It emphasizes that the Commission is obligated to balance the public's constitutional right to know against the employees' constitutional right to privacy when considering companies' motions for protective orders. The Commission argues that its formulation of the rubric was simply a tool for applying this balancing test on a case-by-case basis and was therefore not subject to rulemaking requirements.

¶15 MAPA defines a "rule" as "each agency regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy." Section 2-4-102(11)(a), MCA. Before an administrative agency adopts a rule, MAPA mandates that the agency "comply with the public notice and comment procedures detailed in §§ 2-4-302 and -305, MCA." *State v. Vainio*, 2001 MT 220, ¶ 27, 306 Mont. 439, 35 P.3d 948. These procedures include, among other requirements, that the agency give written notice of its proposed rule, hold a hearing, afford interested parties the opportunity to

submit data, views, or arguments, consider comments in those submissions, and issue a statement explaining its reasons for adopting the rule. Sections 2-4-302, -305, MCA.

¶16    "Unless a rule is adopted in substantial compliance with these procedures, the rule is not valid." *Vainio*, ¶ 27. In *Vainio*, we reversed the defendant's conviction for Medicaid fraud because the conviction was based on his violation of Medicaid policies that the Department of Public Health and Human Services had not adopted in compliance with MAPA rulemaking procedures. *Vainio*, ¶ 71. We reached a similar conclusion in two earlier cases. In *Northwest Airlines v. State Tax Appeal Board*, 221 Mont. 441, 720 P.2d 676 (1986), we held invalid a Department of Revenue auditor's unilateral decision to include airline carriers' nonstop "flyover" miles in the agency's tax apportionment formula for determining a carrier's corporate license tax. We concluded that the standard inclusion of "flyover" miles constituted a rule under MAPA. *Nw. Airlines*, 221 Mont. at 445, 720 P.2d at 678. In *Rosebud County v. Department of Revenue*, 257 Mont. 306, 849 P.2d 177 (1993), we held invalid a Department of Revenue decision to alter the default method for assessing the market value of heavy equipment. The Department sent a letter to all county assessors directing them to use the new method. *Rosebud Cnty.*, 257 Mont. at 308, 849 P.2d at 178. Although the Department later conducted rulemaking to adopt this new method as a rule, we held that the rulemaking process was a "sham" because the Department had denied "the public, the Legislature, and certain affected agencies" their "right to participate effectively in the governmental process." *Rosebud Cnty.*, 257 Mont. at 311, 849 P.2d at 180.

8

¶17   The Commission's rubric establishes a list of three formulaic criteria that it uses "to judge companies' motions for protective orders" of executive compensation information and to determine "whether the right to know of the public outweighs the demand of individual privacy involving ETC telecommunication company employee compensation." This rubric does not call for balancing individual interests on a case-by-case basis; it sets a standard by which the Commission judges all motions for protective orders for salary information of regulated ETCs.  If the company's circumstances fit the formula, there is no further inquiry; all companies that receive at least twenty percent of their revenues from federal subsidies must disclose the compensation information of executives earning over $100,000 per year in total compensation, while all companies that do not meet the twenty percent threshold may keep that information confidential.

¶18   The term "rubric" is defined as "[a]n established *rule*, custom, or law" or as "[a]n authoritative *rule*, esp. for conducting a public worship service."  Black's Law Dictionary 1529 (Bryan A. Garner ed., 10th ed. 2014) (emphasis added).   The Commission's description of its formula as a "rubric" is apt: it sets a "standard . . . of general applicability" that "implements" the Commission's "policy" of providing for greater public disclosure of how ETCs spend the federal subsidies they receive.  Section 2-4-102(11)(a), MCA.  It therefore constitutes a rule within the meaning of MAPA.

¶19   MAPA categorizes "substantive rules" as either "legislative rules" or "adjective or interpretive rules."  Section 2-4-102(14), MCA.  "Legislative rules" have the force of law and are invalid unless adopted via rulemaking.  Section 2-4-102(14)(a), MCA.  "Adjective or interpretive rules," in contrast, lack the force of law, § 2-4-102(14)(b), MCA, and may

9

be adopted with publication of a statement of the advisory nature of the rule in the Administrative Rules of Montana. Section 2-4-308, MCA. The Commission failed to follow either process. It did not conduct rulemaking, so the rubric did not meet the requirements for a "legislative rule." Section 2-4-102(14)(a), MCA. The Commission also failed to adopt the rubric as advisory only "in accordance with" MAPA's requirements for adopting an "adjective or interpretive rule." Sections 2-4-102(14)(b), -308, MCA.

¶20 The Commission developed and announced its rubric in the orders denying Southern's and Lincoln's motions for protective orders. It did not give advance notice to potentially interested parties of its intent to adopt this rubric or provide such parties an opportunity to comment on the rubric. The rubric is therefore invalid for failure to comply with MAPA rulemaking requirements. *Vainio*, ¶ 27; §§ 2-4-302, -305, MCA. The District Court incorrectly concluded otherwise.

## CONCLUSION

¶21 We reverse the judgments of the District Court in Southern's and Lincoln's cases and instruct the court to vacate the Commission's orders and to remand for further proceedings on the companies' motions for protective orders.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ MICHAEL E WHEAT