Justice Beth Baker delivered the Opinion of the Court.
***233 ¶1 McGree Corporation and Republic Services of Montana petitioned the Second Judicial District Court, Butte-Silver Bow County, to review the Public Service Commission's final order granting L&L Site Services, Inc.'s application for a Class D motor carrier certificate of public convenience and necessity. The District Court affirmed the Commission's final order, holding that the Commission properly considered competition in determining whether public convenience and necessity required the authorization of additional garbage collection service. McGree and Republic appeal. We affirm on each of the following restated issues:
1. Whether the Commission properly considered competition in determining public convenience and necessity under § 69-12-323(2), MCA ;
2. Whether substantial evidence supported the Commission's decision to grant a Class D permit to L&L; and
3. Whether the Commission should have engaged in rulemaking under the Montana Administrative Procedure Act (MAPA) before adopting a new standard.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 L&L Site Services, Inc., is a waste-hauling business operating in Montana. It has had a limited Class D certificate since 2007 to haul construction debris in Gallatin County and in those parts of Madison County within twenty miles of Big Sky, Montana. The Commission denied an application from L&L in 2011 to expand its operation into general residential and commercial garbage hauling. L&L filed another application for a full Class D certificate on May 20, 2015, to provide service throughout both Gallatin and Madison Counties.
¶3 The Commission published notice of L&L's second application to expand into commercial and residential garbage hauling in July 2015. McGree and Republic filed protests *328 with the Commission against the application. McGree holds a Class D certificate to haul garbage within an eighty-mile radius of Whitehall, Montana. Republic hauls garbage in Gallatin and Madison Counties under a Class D certificate.
¶4 Before the hearing on the petition, the parties stipulated that L&L is fit to provide the proposed service. The Commission held a three-day hearing in November 2015 to hear testimony regarding public convenience and necessity. L&L presented eleven witnesses in support of its petition-nine of whom were "shippers" or customers. Republic presented nine witnesses in opposition. McGree presented no witnesses.
***234 ¶5 After post-hearing briefing, the Commission, on a 3-2 vote, approved L&L's application for all of Gallatin County, but limited the permit for Madison County to places accessible from Highway 64 serving the Big Sky, Moonlight Basin, and Yellowstone Club areas. The Commission issued its final order in March 2016. McGree and Republic filed a timely Petition for Judicial Review with the District Court. Following briefing and oral argument on the petition, the District Court affirmed the Commission's final order in December 2017. Additional relevant facts are discussed below.
STANDARDS OF REVIEW
¶6 "In an administrative appeal, we apply the same standards of review that the district court applies." Nw. Corp. v. Mont. Dep't of Pub. Serv. Regulation , 2016 MT 239, ¶ 25, 385 Mont. 33, 380 P.3d 787. Section 2-4-704, MCA, governs administrative appeals. An agency's interpretation of a statute is a conclusion of law that we review de novo. Nw. Corp. , ¶ 25. We review its findings of fact for clear error. Nw. Corp. , ¶ 25.
¶7 The court may reverse or modify an agency decision if the "substantial rights of the appellant" were prejudiced because the administrative findings are "in violation of ... statutory provisions," "made upon unlawful procedure," "affected by other error of law," "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record," or "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Section 2-4-704(2)(a)(i), (iii), (iv), (v), (vi), MCA.
¶8 "The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Section 2-4-704(2), MCA. "A finding of fact is clearly erroneous if it is not supported by substantial evidence in the record, if the fact-finder misapprehended the effect of the evidence, or if a review of the record leaves the court with a definite and firm conviction that a mistake has been made." Williamson v. Mont. Pub. Serv. Comm'n , 2012 MT 32, ¶ 25, 364 Mont. 128, 272 P.3d 71.
DISCUSSION
¶9 1. Whether the Commission properly considered competition in determining public convenience and necessity under § 69-12-323(2), MCA.
¶10 The disagreement between the parties centers on when the Commission may consider competition in determining whether public ***235 convenience and necessity requires the granting of an application for a Class D motor carrier certificate. McGree and Republic maintain that the Commission may not consider competition until after it has determined that there is a public need for the proposed services. They argue that this is because the statute favors maintenance of the existing service providers to ensure stable service. McGree and Republic point out that this Court determined in Baker Sales Barn, Inc. v. Mont. Livestock Comm'n , 140 Mont. 1, 10, 367 P.2d 775, 780 (1962), that "convenience and necessity are not synonymous." They argue that a desire for competition goes to convenience, not to necessity; therefore, the Commission must find that there is a public need for the additional proposed service before it can consider any potential benefits from competition.
¶11 McGree and Republic argue that our decision in Waste Management Partners of Bozeman, Ltd. v. Montana Department of Public Service Regulation , 284 Mont. 245, 944 P.2d 210 (1997), further bolsters their position. They argue that in *329 Waste Management Partners , this Court endorsed as the "correct standard" a framework in which the Commission first determined that there was public need before considering competition. Waste Mgmt. Partners , 284 Mont. at 251, 944 P.2d at 214. McGree and Republic point out that in the 2011 denial of L&L's prior application, the Commission itself stated that "competition can only be considered after need has been established by the applicant." In re L&L Site Servs., Inc. , No. T-10.36.PCN, Or. 7147, ¶ 97, (Mont. Pub. Serv. Comm'n May 23, 2011). McGree and Republic argue that the Commission improperly relied on legislative history to reinterpret the statute contrary to this Court's conclusive interpretation in Waste Management Partners .
¶12 The Commission and L&L respond that the plain language of § 69-12-323(2)(b), MCA, does not mandate at what point the Commission may consider competition when determining whether public convenience and necessity require the granting of a Class D application. Rather, whether and when to consider competition is left to the sound discretion of the Commission, and the exercise of such discretion is dependent on the facts and circumstances of each application.
¶13 In its final order granting L&L's application on appeal here, the Commission explained that it previously had declined to consider competition before determining public need for the additional service. "Despite this," it continued, "the Commission will consider competition in addressing public need in this case." Relying on the plain language of the statute, the Commission reasoned that "[a]n interpretation that ***236 precludes consideration of one component of determination of public convenience and necessity (i.e. , need) does violence to the statute." It concluded that "[i]n this case, competition and need are related concepts," noting that, based on the evidence presented to the Commission, "a consideration of competition serves to establish need and lack of willingness of an incumbent to provide service absent the prospect or reality of competition." The Commission went on to explain that the legislative history of the statute also supported this interpretation.
¶14 We first turn to the statute at issue. As we recognized in Waste Management Partners , "the legislature has chosen to partially regulate the garbage industry in Montana." Waste Mgmt. Partners , 284 Mont. at 251, 944 P.2d at 214. The Commission regulates the garbage hauling industry in Montana primarily through its regulation of entry of new providers into the market. See Title 69, chapter 12, MCA. Motor carriers are divided into five classes; Class D motor carriers are those operating motor vehicles transporting garbage. Section 69-12-301(5), MCA. A motor carrier may not haul garbage in Montana without first obtaining a Class D certificate from the Commission. Section 69-12-314, MCA. Section 69-12-323(2)(a), MCA, requires the Commission to issue a Class D certificate to an applicant if "public convenience and necessity require the authorization of the service proposed or any part of the service proposed." In determining whether to issue a permit, the Commission must consider:
(i) the transportation service being furnished or that will be furnished by any railroad or other existing transportation agency;
(ii) the likelihood of the proposed service being permanent and continuous throughout 12 months of the year; and
(iii) the effect that the proposed transportation service may have on other forms of transportation service that are essential and indispensable to the communities to be affected by the proposed transportation service or that might be affected by the proposed transportation service.
Section 69-12-323(2)(a), MCA. The statute does not define public convenience or necessity, but provides three factors the Commission must consider. We have explained previously that an agency need not "adopt rigid rules defining" public convenience and necessity, "[b]ecause the determination of public convenience and necessity involves such a fact-intensive inquiry." Ramage v. Dep't of Revenue , 236 Mont. 69, 73, 768 P.2d 864, 866 (1989). The Commission uses the three-part framework from the Interstate Commerce Commission's decision in ***237 *330 In re Pan-American Bus Lines Operation , 1 M.C.C. 190, 203 (I.C.C. 1936), as a guide in determining public convenience and necessity. Waste Mgmt. Partners , 284 Mont. at 254, 944 P.2d at 216. That framework asks: (1) "whether the new operation or service will serve a useful public purpose, responsive to a public demand or need"; (2) whether existing carriers "can and will" serve that public purpose without the new operation or service; and (3) whether the new operation or service can serve that useful public purpose "without endangering or impairing the operations of existing carriers contrary to the public interest." Waste Mgmt. Partners , 284 Mont. at 254, 944 P.2d at 216 (quoting In re Pan-Am. Bus Lines Operation , 1 M.C.C. at 203).
¶15 In addition, § 69-12-323(2)(b), MCA, authorizes, but does not require, the Commission to consider competition when determining public convenience and necessity on applications for Class D certificates. That section provides: "For the purposes of issuing a certificate of public convenience and necessity to a Class D motor carrier, a determination of public convenience and necessity may include a consideration of competition." Section 69-12-323(2)(b), MCA. Through § 69-12-323(2)(b), MCA, the Legislature "has given the [Commission] the discretion to consider competition in order to handle potential harmful monopoly situations." Waste Mgmt. Partners , 284 Mont. at 251, 944 P.2d at 214. "[C]ompetition in the abstract is insufficient standing alone to justify granting an application. Rather, there must be sufficient evidence in the record based upon the specific facts at hand to establish public convenience and necessity." Waste Mgmt. Partners , 284 Mont. at 257, 944 P.2d at 218. "Consideration of competition may be beneficial in some cases, although certainly not in all cases." Waste Mgmt. Partners , 284 Mont. at 251, 944 P.2d at 214.
¶16 We will not consider legislative history when the plain language of the statute is clear. Mont. Vending, Inc. v. Coca-Cola Bottling Co. of Mont. , 2003 MT 282, ¶ 21, 318 Mont. 1, 78 P.3d 499. The plain language of § 69-12-323(2)(b), MCA, puts no limitation on when the Commission may consider competition. It states simply that "a determination of public convenience and necessity may include a consideration of competition." Section 69-12-323(2)(b), MCA. Read together, subsection 2(a) lists three statutory factors that the Commission must consider in determining public convenience and necessity, and subsection 2(b) allows the Commission to consider the benefits of competition in its determination.
¶17 The parties stipulated that L&L was fit to provide the proposed services under the second statutory factor, § 69-12-323(2)(a)(ii), MCA.
***238 The Pan-American Bus Lines framework the Commission uses provides a structure for the Commission to determine the factors set forth in § 69-12-323(2)(a)(i) and (iii), MCA. We find nothing in the plain language of the statute that requires the Commission to determine that there is a public need for additional service before considering competition.
¶18 Our prior caselaw does not contradict this plain-language reading of the statute. First, Appellants' reliance on Baker to argue that competition may be considered only as part of the factors going to "convenience," but not to "necessity," is belied by the language of § 69-12-323(2)(b), MCA, which states that "a determination of public convenience and necessity may include a consideration of competition." (Emphasis added). McGree and Republic argue that this Court nonetheless approved the consideration of competition only after an applicant has established that there is public need for additional service. Contrary to McGree and Republic's contentions, however, nothing in Waste Management Partners precludes the Commission from considering competition during any part of its analysis.
¶19 In Waste Management Partners , existing garbage hauling services protested an application for a new Class D certificate in their service area. They argued that the statute did not allow the Commission to consider any benefits of competition until it first determined that the existing services were inadequate, that there would be no economic impairment to the existing services, and that the applicant was fit to provide the additional service. Waste Mgmt. Partners , 284 Mont. at 251, 944 P.2d at 214. We rejected this argument. Our analysis laid out a more holistic *331 approach, relying on the requirements of the statute itself. We explained that "the issue is whether under the particular factual circumstance of the case, competition would impose undue hardship and impair the existing transport's ability to provide service to an extent contrary to public interest." Waste Mgmt. Partners , 284 Mont. at 251-52, 944 P.2d at 214. Such a determination "can only be decided on a case-by-case basis in conjunction with a consideration of the other elements" of the analysis. Waste Mgmt. Partners , 284 Mont. at 252, 944 P.2d at 214. The statute "placed no limits on the order in which the [Commission] must evaluate competition," and competition is not "a stand-alone controlling element, but rather ... one factor in the context of the principles of motor carrier regulation." Waste Mgmt. Partners , 284 Mont. at 252, 944 P.2d at 214.
¶20 Neither the plain language of the statute nor our interpretation of it in Waste Management Partners puts any limitation ***239 on when the Commission can consider competition. Rather, we identified limits on the Commission's substantive consideration of competition, explaining that it cannot rely on the benefits of "competition in the abstract ... to justify granting an application." Waste Mgmt. Partners , 284 Mont. at 257, 944 P.2d at 218. Instead, "there must be sufficient evidence in the record based upon the specific facts at hand to establish public convenience and necessity." Waste Mgmt. Partners , 284 Mont. at 257, 944 P.2d at 218. Such circumstances include the existence of unmet demand, inadequate service, and unreasonable rates. See Waste Mgmt. Partners , 284 Mont. at 257, 944 P.2d at 218 ; Rozel Corp. v. Dep't of Pub. Serv. Regulation , 226 Mont. 237, 239, 735 P.2d 282, 284 (1987). Thus, the evidence supporting an application likely will include the nature and adequacy of the service from existing carriers.
¶21 As the District Court stated in its order affirming the Commission's decision,
[T]he [Commission] evaluated the evidence in this particular case and found that need was established. The decision to grant the application was based upon analysis of need considered with the aspect of competition. The application was not granted purely based upon the need for competition for competition's sake. The application was granted pursuant to the applicable law based upon the [Commission's] weighing of the factual testimony.
Based on the plain language of the statute, we hold that the Commission did not err in considering competition in determining whether public convenience and necessity required the granting of an additional Class D certificate to L&L.
¶22 2. Whether substantial evidence supports the Commission's decision to grant a Class D permit to L&L.
¶23 McGree and Republic next argue that the Commission lacked substantial evidence to support its determination that there was public need for additional service. This argument has two parts. First, McGree and Republic maintain that some of the Commission's findings were in clear error, because the Commission misapprehended the effect of the evidence before it. Second, they maintain that L&L failed to present sufficient evidence that showed public need for additional service.
¶24 Regarding their first argument, McGree and Republic insist that the Commission failed to recognize or properly consider the existing competition in most of the relevant areas between Republic, McGree, and the City of Bozeman. They argue further that the Commission misapprehended the testimony from Republic's witnesses Jason Vietch ***240 and Kristin Mitchell to conclude that Republic's target operating margin for the Bozeman area far exceeds a reasonable rate of return. In addition to the Commission's misapprehension of the evidence that was presented, McGree and Republic maintain that L&L failed to present sufficient evidence to support its application. They contend that L&L did not perform an analysis of the market, but only speculated about growth in the area. Of L&L's nine shipper witnesses, they contend that only one testified he currently could not receive garbage hauling services from existing carriers. They maintain that none of the complaints from the other shipper witnesses were as egregious *332 as those before the Commission in Waste Management Services .
¶25 This Court has recognized that public need is not simply unmet demand, but also includes a need for reasonable pricing and better customer service. Waste Mgmt. Partners , 284 Mont. at 255, 944 P.2d at 216 (explaining that the Commission properly granted an application for additional service when "competition in this case will promote the public interest in improving services and perhaps rates, and filling consumer needs that [the existing carrier] failed to meet"). In its decision on L&L's application, the Commission determined from the evidence it heard that there was a public need for fair pricing and better customer service, as well as an inability to receive services.
¶26 In regard to inability to receive services, the Commission relied on the testimony from Charles Immenschuh, who was unable to get services for his outfitting business after contacting Republic on four separate occasions. Immenschuh testified that he had to self-haul because he had no other options for service. The Commission also found based on evidence from both L&L and Republic that there is considerable growth occurring in the Bozeman and Big Sky areas and that the "raw number of new customers is substantially larger than what existed during L&L's last application." In regard to a need for better customer service, the Commission relied on testimony from shipper witnesses and a current Republic driver. The Commission noted service complaints from several shipper witnesses. It highlighted the testimony of Rocky Nelson, the senior director of facilities at the Yellowstone Club. Nelson testified that customer service to the Yellowstone Club improved after Nelson signed an affidavit in support of L&L's application. The Commission concluded that these customer service improvements would not have occurred "so expediently or efficiently" without the threat of competition. The Commission acknowledged Republic's arguments that these are isolated incidents and not pervasive or systemic issues. The Commission found, however, ***241 that the testimony from one of Republic's own drivers demonstrated that the customer service issues were systemic. Robert Webb testified and provided photographs to support L&L's claim that Republic provided substandard service, such as skipped pickups, containers not being emptied, containers not placed back in the proper place or placed in an unsafe manner, and drivers failing to heed the requests of customers. The Commission explained that "[t]his testimony depicts a company failing to control or incentivize its employees to meet the requests of its customers suggesting a need for better customer service than what is currently being provided."
¶27 In finding that there was a need for more reasonable rates, the Commission explained that "Republic's profit margin serves as an example of need for more reasonable rates," relying on the testimonies from Vietch and Mitchell. McGree and Republic argue that the Commission misapprehended the effect of Vietch's and Mitchell's testimonies. Upon questioning from Vice Chair Travis Kavulla, Vietch, Republic's operations manager for the Bozeman area, testified that 22 percent of Republic's revenue is net income. Vice Chair Kavulla later questioned Republic's expert Mitchell, the executive director of the Oregon Refuse and Recycling Association, about the operating margins typically allowed by localities in the rate-setting process in Oregon. Mitchell testified that she had seen "ranges that go 8 to 12" percent. But she qualified her answer, saying that because the numbers are "based on allowable costs" in each area, the margins were "difficult to compare. It's not apples to apples." We agree with McGree and Republic that the Commission misapprehended the effect of this testimony. Without further information about what was included in those figures, the Commission could not compare the rates cited by Mitchell with those cited by Vietch. The Commission's reliance on this misapprehension to determine there was a need for more reasonable rates was clear error.
¶28 The misapprehension of this evidence alone, however, does not require reversal. We examine whether the remaining "reliable, probative, and substantial evidence on the whole record" supports the Commission's finding of public need in its determination of public convenience and necessity.
*333 Section 2-4-704(2)(a)(v), MCA. "Substantial evidence is more than a mere scintilla of evidence but may be less than a preponderance of the evidence." Peretti v. Dep't of Revenue , 2016 MT 105, ¶ 18, 383 Mont. 340, 372 P.3d 447. This Court "may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Section 2-4-704(2), MCA.
¶29 McGree and Republic do not challenge the evidence that the ***242 Commission cited to support its findings regarding unmet need for services and need for better customer service. Rather, they assert that L&L did not present enough evidence and that the Commission failed to consider evidence of existing competition. Montana law grants the Commission authority to decide whether a new carrier may enter the garbage-hauling market in a particular area. Section 69-12-314, MCA. As the fact-finding body, the Commission is entitled to evaluate the strength of the evidence on the statutory factors. Evidence is substantial, "despite the fact that there was evidence that may have supported a different result." Peretti , ¶ 18. McGree and Republic's complaints in essence ask this Court to reweigh the evidence before the Commission-something we will not do. See § 2-4-704(2), MCA. The Commission relied on testimony from the hearing to find that there was unmet need for services and need for better customer service that would not be met without additional competition.
¶30 Granted, the evidence was not as strong as that presented before the Commission in Waste Management Services . But that is not the standard. Rather, we review the record to determine whether the Commission's findings are based on substantial evidence, even if the evidence also could have supported a contrary conclusion. Peretti , ¶ 18. L&L presented witnesses who testified that there was a need for better customer service. The Commission relied on testimony from one of Republic's own drivers that customer service issues were systemic and from a customer that service improved after he expressed support for L&L's application. Although the Commission could have weighed the evidence differently and reached a different conclusion, its finding that public convenience and necessity required the granting of a Class D certificate to L&L was not in clear error. We conclude that the Commission relied on substantial evidence to support its determination.
¶31 3. Whether the Commission should have engaged in rulemaking under the Montana Administrative Procedure Act (MAPA) before adopting a new standard.
¶32 McGree's and Republic's final argument is that the Commission's decision should be reversed because the Commission departed from its own long-established standards for when it would consider competition in determining public convenience and necessity without giving advance notice and going through the rulemaking process in MAPA. Relying on Southern Montana Telephone Co. v. Montana Public Service Commission , 2017 MT 123, ¶ 18, 387 Mont. 415, 395 P.3d 473, McGree and Republic argue that to change "a standard or statement of general applicability," an agency must follow the process for rulemaking under ***243 MAPA, which the Commission failed to do.
¶33 The Commission acknowledged in its final order that it previously had not considered competition until after determining that there was public need. It explained, however, that the plain language of the statute did not require this approach and that "[i]n this case, competition and need are related concepts," citing the need for better customer service and lack of willingness to provide better customer service "absent the prospect or reality of competition."
¶34 Resolution of this issue depends on the difference between an agency's rulemaking and adjudication powers. Section 2-4-102(4), MCA, defines a "contested case" as "a proceeding before an agency in which a determination of legal rights, duties, or privileges of a party is required by law to be made after an opportunity for hearing." The power to adjudicate a contested hearing is a "quasi-judicial power [that] is intended to provide for the enforcement of agency statutes and regulations on a case-by-case basis." Core-Mark Int'l, Inc. v. Mont. Bd. of Livestock , 2014 MT 197, ¶ 26, 376 Mont. 25, 329 P.3d 1278 (quoting 3 Jacob A. Stein et *334 al., Administrative Law § 14.01 (2014)). Section 2-4-102(11)(a), MCA, defines a "rule" as "each agency regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy." Rulemaking is a "quasi-legislative power." Core-Mark Int'l, Inc. , ¶ 26 (quoting 3 Jacob A. Stein et al., Administrative Law § 14.01 (2014)). It "is intended to add substance to the [acts of the legislature], to complete absent but necessary details, and to resolve unexpected problems." Core-Mark Int'l, Inc. , ¶ 26 (alteration in original) (quoting 3 Jacob A. Stein et al., Administrative Law § 14.01 (2014)).
¶35 The proceeding before the Commission was the adjudication of a contested hearing to determine "legal rights, duties, or privileges of" L&L to haul garbage in Gallatin and Madison Counties. Section 2-4-102(4), MCA. This was a specific application of the statutes regulating the granting of Class D certificates to a specific applicant. Section 69-12-323(2)(b), MCA, granted the Commission discretion to consider competition when determining public convenience and necessity. The Commission is not required to go through rulemaking under MAPA to exercise this statutorily granted discretion.
¶36 Our decision in Southern Montana Telephone Co. , does not change this analysis. In Southern Montana Telephone Co. , the Commission adopted "a rubric" of "three formulaic criteria" that it intended to use to adjudicate motions for protective orders going forward. S. Mont. Tel. Co. , ¶ 17. As we explained, this new rubric did "not call for balancing ***244 individual interests on a case-by-case basis," but set formulaic criteria that required no further analysis: if the company's circumstances fit the formula, there would be no inquiry into the facts of the specific dispute. S. Mont. Tel. Co. , ¶ 17.
¶37 Unlike the rubric in Southern Montana Telephone Co. , which sought to eliminate discretion from the Commission's decision-making, the Commission in this case exercised the discretion granted to it by statute to consider competition on a case-by-case basis. Exercising its discretion under the facts presented to it was not rulemaking under MAPA, because the Commission was not announcing and applying a formula that would displace its consideration of case-specific factors to resolve a particular dispute. The Commission instead acknowledged that it was departing from its own precedent in analyzing the facts of the case before it. If an agency declines to follow its precedent, it must "provide a reasoned analysis explaining its departure" from any prior precedent. Waste Mgmt. Partners , 284 Mont. at 257, 944 P.2d at 217 ; see also FCC v. Fox Television Stations, Inc. , 556 U.S. 502, 515, 129 S.Ct. 1800, 1811, 173 L.Ed.2d 738 (2009) ("[T]he agency must show that there are good reasons for the new policy. But it need not demonstrate to a court's satisfaction that the reasons for the new policy are better than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better, which the conscious change of course adequately indicates."). Application of a different analytical approach in its adjudication of a particular case is not tantamount to rulemaking.
¶38 The Commission is not bound by the approach it used to consider competition in L&L's failed 2011 application. The Commission properly explained how it was considering competition under the facts of this particular application for a Class D certificate and properly exercised the discretion granted to it by the statute.
CONCLUSION
¶39 The District Court is affirmed.
We Concur:
MIKE McGRATH, C.J.
INGRID GUSTAFSON, J.
LAURIE McKINNON, J.
JAMES JEREMIAH SHEA, J.